MERRIMACK MUTUAL FIRE INSURANCE COMPANY *vs.*
KEIZO NONAKA & others.[1]

Middlesex. November 2, 1992. - January 19, 1993.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Insurance*, Homeowners' insurance, Coverage, Waiver. *Waiver.*

An insurer was not obliged to afford coverage under its homeowner's pol-
icy, which excluded coverage for bodily injury "expected or intended by
the insured," to insureds, with respect to claims arising out of the
shooting of a person by one of the insureds where, even if this court
were to reexamine the question whether an insurer can be found to
have waived the limits of coverage stated in its policy, this case did not
support the theory that, by its conduct, the insurer waived its right to
disclaim coverage. [189-192]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 11, 1991.

The case was heard by *Patrick F. Brady*, J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Kenneth L. Carson* for the plaintiff.

*Roger A. Cox* for Keizo Nonaka.

WILKINS, J. On June 11, 1990, Anthony J. D'Urso shot
Keizo Nonaka wounding him seriously. The plaintiff (Merri-
mack) commenced this action seeking a declaratory judg-
ment that a Merrimack homeowner's insurance policy cover-
ing D'Urso as an insured did not provide coverage of
Nonaka's claim against D'Urso. That insurance policy ex-
cluded coverage for bodily injury "which is expected or in-
tended by the insured." A jury in this action found that

---

[1]Anthony J. D'Urso and his son Anthony A. D'Urso. The son is not an
interested party to this appeal. Our references to D'Urso are to the father.

D'Urso intentionally shot Nonaka. Subsequently, a second jury awarded $900,000 to Nonaka in his action against D'Urso.[2]

Nonaka does not argue that, by its terms, the Merrimack policy covers his claim against D'Urso. He argued below successfully that Merrimack must afford him coverage of that claim because of Merrimack's conduct in defending the Nonaka claim for approximately five months without giving D'Urso notice of a reservation of rights or a disclaimer of coverage. Because the trial judge found that D'Urso was in no way prejudiced by Merrimack's defense of the tort case, he rejected Nonaka's claim that Merrimack was estopped to deny coverage. His decision in favor of Nonaka was based on his conclusion that Merrimack's dominion over the case, before it commenced this action, "during most of the pretrial period, during which important events such as the deposition of the plaintiff [Nonaka] and the preliminary pretrial conference occurred" obligated it to cover the Nonaka claim. In the judge's view, Merrimack's delay was too great, even if there was no prejudice to D'Urso.

We granted Merrimack's application for direct appellate review. We vacate the judgment and order the entry of a declaration that Merrimack is not obliged to provide coverage of Nonaka's claim against D'Urso.

We recite the significant facts found by the judge or established in the pleadings. On July 30, 1990, Nonaka sued D'Urso alleging only negligent conduct. On August 24, counsel for D'Urso filed an answer. In September, D'Urso's counsel notified Merrimack of the claim. Early in October, counsel selected by Merrimack entered an appearance for D'Urso and original counsel for D'Urso withdrew his appearance. New counsel for D'Urso conducted a deposition of Nonaka in October. Early that month Merrimack retained coverage counsel. On November 19, Nonaka filed an amended complaint that alleged assault and battery as well as other

---

[2]Nonaka has filed a brief individually and as assignee of D'Urso. D'Urso has filed no brief here.

claims, including negligence, and added D'Urso's son Anthony as a defendant. On January 25, 1991, the filing of a second amended complaint was allowed. That complaint alleged no intentional conduct. On February 21, the tort case was called for a preliminary pretrial conference, and an early trial date was set. On March 11, Merrimack filed this declaratory judgment action. Later that month counsel selected by the D'Ursos appeared for them in Nonaka's tort action (at Merrimack's expense), and counsel selected by Merrimack withdrew his appearance. On May 23, the jury in this action found that D'Urso intentionally shot Nonaka. On May 31, judgment was entered for Nonaka in his action against D'Urso.

Any claim that Merrimack's conduct bars it from disclaiming coverage must rest either on estoppel or on waiver. *Sweeney* v. *Frew*, 318 Mass. 595, 598 (1945). Estoppel is not involved here because D'Urso did not rely to his detriment on anything Merrimack did or did not do. See *Royal-Globe Ins. Co.* v. *Craven*, 411 Mass. 629, 635 (1992).[3] To succeed Nonaka must establish that Merrimack waived its right to disclaim coverage.

An insurance company is obliged to provide coverage to an insured who has violated a provision of the policy if the company has waived its right to assert the policy breach as a ground for denying liability. Waiver consists of the insurer's voluntary or intentional relinquishment of a known right. See *Sheehan* v. *Commercial Travelers Mut. Accident Ass'n of Am.*, 283 Mass. 543 (1933); *Powell* v. *Fireman's Fund Ins. Cos.*, 26 Mass. App. Ct. 508, 511 (1988). An insurer's intention to waive a ground for not providing coverage may be inferred from the circumstances. *Eaton* v. *Globe & Rutgers Fire Ins. Co.*, 227 Mass. 354, 364 (1917). See *Hurley* v.

---

[3]By not earlier (a) disclaiming coverage, (b) withdrawing from the defense of the case, (c) tendering notice of a reservation of rights to D'Urso, or (d) commencing an action such as this, Merrimack ran the risk that D'Urso might be able to prove that Merrimack was estopped to deny coverage. In retrospect, it seems that Merrimack would have been well-advised to have acted sooner to protect its position.

*Metropolitan Life Ins. Co.*, 296 Mass. 130, 136 (1936). One class of waiver case involves a claimed breach of an insured's duty to the insurer, such as the failure promptly to notify the insurance company of a claim or the failure of an insured to cooperate with the insurance company. See, e.g., *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85, 99 (1983); *Rose* v. *Regan*, 344 Mass. 223 (1962).[4] Another class of waiver case involves claimed misrepresentations by the insured that led the insurer to provide insurance coverage. See, e.g., *Employers' Liab. Assurance Corp.* v. *Vella*, 366 Mass. 651 (1975).[5]

---

[4]In the *Rose* case, the court held that an insurance company had waived its right to disclaim coverage because of the noncooperation of its insured, when, without the insured's consent, the insurance company entered an appearance for him when its insured had not been properly served with process. *Rose* v. *Regan*, 344 Mass. 223, 229 (1962). This action "irrevocably and materially affected the insured's position in respect" to the action. *Id.* at 228. "[T]he controlling circumstance [was] the exercise of dominion over the case, to determine irrevocably its future course." *Id.* at 229. The insurer thus waived its defense of noncooperation by entering an appearance, which gave the court jurisdiction over the insured that the court would not otherwise have had and caused the insured to lose his claim for false return of service. *Id.* at 226-227.

[5]In the *Vella* case, the insurer sought a determination that it could disclaim liability because of an intentional misrepresentation by its policyholder. We held that the policyholder had made no material misrepresentation (*id.* at 656), and that, in any event, the insurer lost its right to disclaim liability "when it [knew] the facts, [failed] to disclaim within a reasonable time, and [acted] in a way inconsistent with an intention to disclaim" (*id.* at 658). There, the insurer did not raise the question of its right to disclaim until one and one-half years after it had discovered the facts on which it relied. Although the word "waiver" does not appear in the opinion, the authorities cited in support of the principle just set forth deal with the loss of the power to avoid an agreement, with waiver, or with acts manifesting an election to affirm a transaction. *Id.* The delay was too great, and the insurer lost any right to disclaim. In such circumstances, the passage of an unreasonable length of time before disclaiming liability, after learning the facts and after undertaking a defense of a claim under the policy required a finding of waiver and, therefore, the insurer lost the right to disclaim liability.

Two courts may have treated the *Vella* case as an estoppel case. See *Powell* v. *Fireman's Fund Ins. Cos.*, 26 Mass. App. Ct. 508, 512 (1988); *Whitney* v. *Continental Ins. Co.*, 595 F. Supp. 939, 943 (D. Mass. 1984). There was no reliance in the *Vella* case. Estoppel was, therefore, not involved. It was a waiver case.

Nonaka's argument rests on a claim that the entry of an appearance for D'Urso by an attorney selected by Merrimack in fulfilment of its duty to defend Nonaka's claim and the continuation of that appearance for approximately five months resulted, as a matter of law, in a waiver of Merrimack's right to disclaim coverage. The concept of waiver has had no part to play in the insurance law of the Commonwealth when an insured has argued that the insurance company has waived the limits of coverage defined in the insurance policy. In *Palumbo* v. *Metropolitan Life Ins. Co.*, 293 Mass. 35 (1935), we said that "whatever may be the scope of waiver in the law of insurance, it does not extend to the broadening of the coverage, so as to make the policy cover a risk not within its terms. That would require a new contract, and cannot be accomplished by waiver." *Id.* at 37-38. See *New England Gas & Elec. Ass'n* v. *Ocean Accident & Guar. Corp.*, 330 Mass. 640, 665 (1953); *Wedgwood* v. *Eastern Commercial Travelers Accident Ass'n*, 308 Mass. 463, 467 (1941). This is the majority view in this country. See A.D. Windt, Insurance Claims and Disputes § 6.33, at 361 (2d ed. 1988) ("coverage under an insurance contract cannot be created or enlarged by waiver"). This principle, argued to us by Merrimack and not discussed in Nonaka's brief, is dispositive of this case. The waiver cases on which Nonaka relies are not applicable to this case.

Even if we were to reexamine the question whether an insurance company could be found to have waived the limits of coverage stated in its policy, this case would not support a waiver theory. There was, of course, no express waiver. An implication that Merrimack intended to waive the coverage question is not warranted. Because there were negligence counts in each successive complaint, it was reasonable for Merrimack to conclude that it had a duty to defend all aspects of the case. See *Aetna Casualty & Sur. Co.* v. *Continental Casualty Co.*, 413 Mass. 730, 732 n.1 (1992) (weight of authority imposes duty to defend all counts of complaint if insurer has duty to defend at least one count).[6] Merrimack

---

[6]The purpose of reserving the right to disclaim is to permit an insurer to fulfil its duty to defend without forfeiting any subsequent right to disclaim. See *Salonen* v. *Paanenen*, 320 Mass. 568, 573 (1947). It seems that Merrimack should have availed itself of this option at least as early as when

retained coverage counsel shortly after it initially retained counsel to defend D'Urso. The trial judge noted that "presumably all of the attorneys were aware of a potential coverage issue."[7]

The judgment is vacated. Judgment shall be entered declaring that Merrimack Mutual Fire Insurance Company is not obliged to afford coverage under its homeowner's policy to Anthony J. D'Urso, or Anthony A. D'Urso, with respect to claims arising out of the shooting of Keizo Nonaka on June 11, 1990.

*So ordered.*

Nonaka filed a complaint alleging an intentional tort. Merrimack's failure to do so cannot alone support a finding of waiver.

[7]The judge found that Merrimack's coverage counsel kept up with the progress on the case by speaking from time to time with Nonaka's attorney.