The ALAN CORPORATION and East Side Oil Company, Inc., Plaintiffs,

v.

INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, Defendant.

Civ. A. No. 90–40179–GN.

United States District Court, D. Massachusetts.

June 1, 1993.

Michael J. Reed, Collins & Reed, Shrewsbury, MA, Raymond J. Reed, Stanley L. Weinberg, Collins, Reed & Weinberg, Worcester, MA, for plaintiffs.

Keith C. Long, Robert A. Whitney, Warner & Stackpole, Boston, MA, Donald V. Jernberg, Elaynne B. Cothran, Wolff & Donnelly, Chicago, IL, for defendant.

## MEMORANDUM OF DECISION

GORTON, District Judge.

This action comes before the Court on cross-motions for summary judgment. The plaintiffs, The Alan Corporation and East Side Oil Company, Inc. (collectively referred to as "Alan Corp."), originally filed their complaint in this action on August 17, 1990, seeking a declaratory judgment that they are entitled to coverage for environmental clean-up costs under an environmental impairment liability insurance policy, and alleging claims for breach of contract and unfair and deceptive trade practices under M.G.L. c. 93A. The plaintiffs then moved for summary judgment on August 19, 1992. The defendant, International Surplus Lines Insurance Company ("ISLIC"), filed its own summary judgment motion on October 9, 1992, seeking a declaration that there is no coverage under the policy, and a determination that ISLIC did not engage in unfair claims practices which violated M.G.L. c. 93A.

## I. FACTS

The facts in this case are generally not in dispute. Where such a dispute exists, however, the opposing contentions are noted in this summary. Prior to July 16, 1987, Alan Corp., a distributor of fuel oil to retail customers, used a site in Leominster, Massachusetts ("the Leominster site"), as a distribution facility and a bulk storage site for oil. The Leominster site contained nine underground storage tanks. Alan Corp. also used a site in Fitchburg, Massachusetts ("the Fitchburg site") as a distribution facility and a bulk storage site for oil, which contained two underground storage tanks.

On August 28, 1986, Alan Corp. obtained an environmental impairment liability insurance policy ("the policy") from ISLIC. The policy was a "claims made" policy providing coverage for third-party claims of bodily injury and property damage brought against the policyholder. The policy also provided for reimbursement of the policyholder for costs incurred pursuant to government action requiring the clean-up of environmental damage pursuant to a pollution incident. The policy term ran from August 28, 1986 until August 28, 1987. The policy contained the following provisions:

I. Pollution Liability Coverage

A. The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as compensatory damages because of bodily injury or property damage to which this insurance applies, provided that:

1) such bodily injury or property damage is caused by a pollution incident which

commences subsequent to the retroactive date shown in the declarations of this policy; and

2) the claim for such damages is first made against the insured during the policy period and reported to the company during the policy period and reported to the company during the policy period or within fifteen days after its termination.... [hereinafter "§ I.A"]

B. The company will reimburse the insured for reasonable and necessary clean-up costs incurred by the insured in the discharge of a legal obligation validly imposed through governmental action which is initiated during the policy period, provided that:

1) such clean-up costs are incurred because of environmental damage to which this insurance applies; and

2) the environmental damage is caused by a pollution incident which commences subsequent to the retroactive date shown in the declarations of this policy.... [hereinafter "§ I.B"]

Alan Corp. shut down the Leominster and Fitchburg sites on July 16, 1987. On or about August 25, 1987, Alan Corp. first became aware that potential contamination problems existed at both the Leominster and Fitchburg sites. Alan Corp. then notified Mr. Parker Wellington, the insurance agent/broker, of the potential contamination at both sites. ISLIC claims that it received actual notice of these claims of potential contamination on August 28, 1987, the final day of the policy term.

An Alan Corp. employee, Mr. David White, also allegedly notified the Leominster Fire Department of the potential contamination at the Leominster site by telephone on or about August 25, 1987. In that telephone conversation, a Leominster Fire Department employee allegedly told Mr. White to determine the extent of the contamination, and report it to the Massachusetts Department of Environmental Protection ("D.E.P.").[1] Alan Corp. does not claim that an employee tele-phoned the Fitchburg Fire Department reporting any potential contamination of the Fitchburg site.

Alan Corp. had previously reported contamination of a site they owned in Worcester, Massachusetts ("the Worcester site") to ISLIC, and insurance coverage for this site is not in issue. Alan Corp. alleges, however, that on an unspecified date, after they reported the potential contamination of the Leominster and Fitchburg sites to Mr. Wellington, an unnamed ISLIC employee told Alan Corp. to "lay low" with respect to the Leominster and Fitchburg sites until the clean-up of the Worcester site was completed. Alan Corp. also claims that at this same unspecified date, the unnamed ISLIC employee also told Alan Corp. that ISLIC would provide coverage for any necessary clean-up of the Leominster and Fitchburg sites, as soon as the Worcester site was cleaned up. ISLIC denies that any of its employees ever made any such representations.

After reporting the potential contamination on or about August 25, 1987 to Mr. Wellington and the Leominster Fire Department, Alan Corp. then contracted with Lycott Environmental Research Company, Inc. ("Lycott") to determine the extent, if any, of the contamination at both the Leominster and Fitchburg sites. Alan Corp. also then exercised its right to purchase an "extended reporting period option" for the policy from ISLIC, and this option was effective from August 28, 1987 to August 28, 1988. On October 30, 1987, Lycott completed its site assessments, which confirmed contamination at both the Leominster and Fitchburg sites. The conclusions of the Lycott report were forwarded to Mr. Wellington on November 3, 1987.

Alan Corp. reported the contamination of the Leominster site to the D.E.P. on July 12, 1988. On January 11, 1989, the D.E.P. notified Alan Corp. that it should remove stock piled soils at the Leominster site. On March 30, 1989, the D.E.P. issued a "notice of responsibility" to Alan Corp. relating to the

---

1. In August, 1987, the relevant Massachusetts environmental agency was the Department of Environmental Quality Engineering ("D.E.Q.E."). The D.E.Q.E. has since been re-named the Department of Environmental Protection ("D.E.P.") and will be referred to as such throughout this opinion.

Leominster site, and the company then conducted remedial efforts, as required by the D.E.P. Alan Corp. does not state when it notified the D.E.P. of the contamination of the Fitchburg site, but on August 13, 1991, the D.E.P. issued a "notice of responsibility" to Alan Corp. with respect to that site.

Alan Corp. did not report any claim for third-party bodily injury or property damage to ISLIC during the policy term (August 28, 1986 to August 28, 1987), or during the extended reporting period (August 28, 1987 to August 28, 1988). Alan Corp. has, however, sought coverage from ISLIC for the money it expended in cleaning up the Leominster and Fitchburg sites.

On June 8, 1989 and July 25, 1989, ISLIC denied insurance coverage under the policy for pollution claims pertaining to the Leominster site because it claimed that: 1) governmental action had not been initiated during the policy period, and 2) the purchase of the extended reporting period option did not extend coverage for environmental claims for clean-up costs, pursuant to § I.B of the policy. By letter of August 8, 1989, ISLIC denied coverage under the policy for Alan Corp.'s claims pertaining to the Fitchburg site because of the alleged lack of cooperation by the insured in determining whether contamination at the Fitchburg site existed. In the August 8, 1989 letter, ISLIC reserved its rights under all applicable conditions and exclusions of the policy in the event further investigative material was received.

## II. THE SUMMARY JUDGMENT STANDARD

Summary Judgment shall be rendered where the pleadings, discovery on file and affidavits, if any, show "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When one party has moved for summary judgment, it then falls to the opposing party to demonstrate a genuine disagreement as to some material fact. "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party [and] 'material' means that the fact is one that

might affect the outcome of the suit under the governing law." *United States v. One Parcel of Real Property, Etc. (Great Harbor Neck, New Shoreham, R.I.)*, 960 F.2d 200, 204 (1st Cir.1992) (citations and internal quotation marks omitted). On a motion for summary judgment, the Court views the evidence and all reasonable inferences to be gleaned therefrom in the light most favorable to the nonmoving party. *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993).

When a movant-defendant has suggested that competent evidence to prove the case is missing, the burden devolves upon the nonmovant-plaintiff to document some factual disagreement sufficient to withstand summary judgment. *Wynne v. Tufts University School of Medicine*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied*, — U.S. ——, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993), *quoting Mesnick v. General Electric Co.*, 950 F.2d 816, 822 (1st Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). The nonmovant-plaintiff must be able to point to specific, competent evidence to support its claim. *Wynne*, 976 F.2d at 794. Mere allegations, or conjecture unsupported in the record are insufficient to raise a genuine issue of material fact. *Wynne*, 976 F.2d at 794; *Mack v. Great Atlantic & Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989).

## III. COVERAGE UNDER THE POLICY

The proper interpretation and construction of an insurance policy presents a question of law for the judge. *High Voltage Engineering Corp. v. Federal Ins. Co.*, 981 F.2d 596, 600 (1st Cir.1992); *J.I. Corp. v. Federal Insurance Corp.*, 730 F.Supp. 1187, 1189 (D.Mass.), *aff'd.*, 920 F.2d 118 (1990); *Jet Line Services, Inc. v. American Employers Insurance Co.*, 404 Mass. 706, 710 n. 5, 537 N.E.2d 107, 111 n. 5 (1989). "A policy of insurance whose provisions are plainly and definitely expressed in appropriate language must be enforced in accordance with its terms." *High Voltage Engineering Corp.*, 981 F.2d at 600, *quoting Stankus v. New York Life Ins. Co.*, 312 Mass. 366, 369, 44 N.E.2d 687, 689 (1942). An insurance contract should be construed according to the "fair and reasonable meaning of the words in

which the agreement of the parties is expressed." *J.I. Corp.*, 730 F.Supp. at 1189, *quoting Cody v. Connecticut General Life Ins. Co.*, 387 Mass. 142, 146, 439 N.E.2d 234, 237 (1982); *Commerce Ins. Co. v. Koch*, 25 Mass.App.Ct. 383, 384, 522 N.E.2d 979, 980 (1988).

## A. Clean-up Costs

Alan Corp. claims that ISLIC is required to reimburse it for all clean-up costs that it has incurred with respect to the Leominster and Fitchburg sites, as well as for defense costs which it has incurred in connection with D.E.P. proceedings.

### 1. The Leominster Site

█ Alan Corp. bases its claim for coverage on the Leominster site on the proposition that government action was initiated during the policy period when its employee, Mr. White, telephoned the Leominster Fire Department on or about August 25, 1987, and reported potential contamination of that site. In response, the Leominster Fire Department told Mr. White that Alan Corp. should first determine the extent of any contamination, and then report it to the D.E.P. Alan Corp. contends that this telephone call set in motion a chain of events that culminated in an order of the D.E.P. to Alan Corp. to clean up the Leominster site, and the issuance of a notice of responsibility.

ISLIC contends that § I.B. does not provide coverage for clean-up costs to Alan Corp. because no governmental action imposing a legal obligation on Alan Corp. was initiated during the policy period. ISLIC argues that 1) Alan Corp. did not report contamination to the D.E.P. until July 12, 1988, and 2) that the D.E.P. did not order any type of clean-up until January 11, 1989, and 3) the D.E.P. did not issue a notice of responsibility to Alan Corp. until March 30, 1989, all of which occurred after the expiration of the policy.

Section I.B of the policy provides that ISLIC will reimburse the insured for reasonable clean-up costs incurred by the insured in the discharge of a legal obligation imposed through governmental action which is initiated during the policy period. The policy does not expressly define "governmental action", or when such action is initiated. Nor has the case law definitively construed the term "governmental action", or determined when such action is initiated in the context of this kind of environmental policy. Nevertheless, the Court may read the policy and interpret the term "governmental action" according to its reasonable meaning. *See e.g. Cody v. Connecticut General Life Ins. Co.*, 387 Mass. 142, 146, 439 N.E.2d 234, 237 (1982).

Section I.B of the policy serves to protect the insured from costs for which it is liable because of administrative mechanisms mandating environmental investigation and clean-up. There is little question that there was ultimately governmental action which imposed a legal obligation on Alan Corp. to clean-up the Leominster site. The question, however, is precisely when that action was initiated. Within an agency's internal machinations, it is difficult to determine the point in time when the agency can be said to have initiated an action which ultimately results in the imposition of a legal obligation to clean up a site. An easier question in this factual context is when an administrative action has *not* yet been initiated. Here, the relevant administrative agency, the D.E.P., could not have initiated governmental action prior to receiving notice of the potential contamination.

There is no suggestion that the D.E.P. had actual or constructive notice of the contamination, or the potential contamination at the Leominster site prior to notice from Alan Corp. Therefore, governmental action could not have been initiated before such notice was given to the D.E.P. on July 12, 1988. Because the D.E.P. did not have notice of the contamination of the Leominster site until after the policy had expired, Alan Corp.'s claim of governmental action which imposed a legal obligation on it during the policy term is unavailing. Thus, § I.B of the policy fails to provide coverage to the Alan Corp.

Alan Corp.'s argument that governmental action was initiated by virtue of a telephone call to the Leominster Fire Department on or about August 25, 1987, reporting potential

contamination is not persuasive. Alan Corp. contends that Massachusetts regulations, 526 C.M.R. 9.0 *et seq.*, which were in effect in 1988, required it to report the contamination to the local Fire Department and then follow all fire department directives, and that its telephone call constituted the initiation of governmental action which imposed a legal obligation on it.

The cited regulations, however, have no applicability to the facts of this case.[2] Rather, they address emergency situations in which the fire department is given authority to take charge of emergency containment procedures to prevent a fire or explosion. The regulations do not give a local fire department authority to require pollution contamination testing at a particular site. Furthermore, the regulations assign specific responsibility for the site to the D.E.P. once the fire/explosion hazard no longer exists.

■ Alan Corp. also argues that the extended reporting option which it purchased in connection with the policy extended coverage for the entire policy until August 28, 1988, and that its notice to the D.E.P. reporting the contamination of the Leominster site on July 12, 1988 fell within the term of the extension. This argument is also to no avail. An examination of § V of the policy indicates that the extended reporting option applied only to § I.A bodily injury and property damage claims, and not to § I.B clean-up cost claims.[3] The sole effect of the extended reporting option is to extend the applicable "policy period" for claims of bodily injury and property damage. There is no express or implied provision extending the policy period for all classes of incidents covered under the policy. *Wolf Brothers Oil Co., Inc. v. International Surplus Lines Ins. Co.*, 718 F.Supp. 839, 843 (W.D.Wash.1989). Furthermore, § V of the policy provides that "all other provisions .. shall be unchanged," which means that the triggering event for coverage of clean-up costs set out in § I.B is not modified. *Id.* The insurer's liability for clean-up costs is premised solely on the initiation of governmental action, there being no independent restriction on when the claim against the insurer is reported. To construe

2. The 1988 regulations upon which Alan Corp. relics, 526 C.M.R. 9.19, provide that:
1) In the event of a leak, ... the following steps shall be taken:
... b) the owner or operator shall immediately notify the head of the local fire department and the Office of Incident Response of the [DEP]
...
2) The head of the local fire department shall take charge of all emergency containment procedures, and shall take whatever measures are necessary to prevent fire and explosion or, in the case of a fire or explosion, to protect the persons and property within the vicinity from such hazards.
3) The head of the local fire department shall verify that the requirements of 526 C.M.R. 9.19(1) are complied with.
4) Upon arrival of the representative of [D.E.P.], the head of the local fire department shall advise him of the conditions at the site and the results of the investigations required by 527 C.M.R. 9.19(1) ...
6) The head of the local fire department shall have the responsibility of the containment procedures as long as, in his opinion, a fire or explosion hazard exists. During this period, the elimination of the fire/explosion hazard will have priority over all other concerns, recognizing that the protection of the environment should be considered at all times. Once such hazards cease, the representative of [DEP] shall assume all responsibility.

Additionally, the plaintiffs point to 527 C.M.R. 9.23 (1988), which, in essence, provides that any landowner who violates any provision of 5.27 C.M.R. 9.00 *et seq.* shall be subject to legal penalties.

3. Section V of the policy provides:

"If for any reason other than non-payment of premium, the company cancels or refuses to renew this policy, the named insured may:
1) by giving written notice to the company on or before the effective date of the cancellation, or no later than ten days after the effective date of non-renewal; and
2) by paying promptly when due an additional premium of not more than 50% of the annual premium developed under this policy,
have an endorsement issued providing an extended reporting period of one year following the effective date of the cancellation or non-renewal. Any claims for damages because of bodily injury or property damage first made against the insured and reported to the company during that extended reporting period shall be deemed to be so made and reported during the policy period, but only if the bodily injury or property damage occurred prior to the effective date of the cancellation or non-renewal. All other provisions of this policy, including those relating to the company's limit of liability, shall be unchanged by this provision...."

the extended reporting option as extending the reporting period for such claims is an over-strained construction of the policy, which the Court refuses to adopt. *Id.*

### 2. *The Fitchburg Site*

■ With respect to the Fitchburg site, Alan Corp. does not proffer any evidence that it notified the D.E.P. of the oil contamination within the policy period. Nor does Alan Corp. make any claim that it contacted the Fitchburg Fire Department within the policy period. Alan Corp. has failed to point to any evidence that the D.E.P. had actual or constructive notice of the contamination of the Fitchburg site prior to the expiration of the policy. Furthermore, the D.E.P. did not issue a "notice of responsibility" to Alan Corp. with respect to the Fitchburg site until August 13, 1991. Thus, the record is void of any evidence that governmental action imposing a legal obligation upon Alan Corp. to clean up the Fitchburg site was initiated during the policy period.

### B. *Property Damage*

■ Alan Corp. attempts to characterize its clean-up costs as "property damage", and claims that it is entitled to "compensatory damages" under § I.A of the policy. Alan Corp. argues that: 1) the potential contamination of the two sites was discovered on August 25, 1987, subsequent to the retroactive date of the policy, August 25, 1984, and 2) that it reported the "property damage" to ISLIC within the policy period, and well within the extended reporting period, which ended August 27, 1988, thus triggering coverage. ISLIC contends that Alan Corp. has suffered damages in the form of clean-up costs and that § I.A does not afford coverage to it for that kind of damage.

Alan Corp.'s attempt to characterize its clean-up costs as "property damage", has previously been addressed by the United States District Court for the Western District of Washington, in which the Court in *Wolf Brothers Oil Co., Inc. v. International Surplus Lines Ins. Co.*, 718 F.Supp. 839 (W.D.Wa.1989) construed the same kind of environmental impairment liability insurance policy in an analogous situation. This Court

agrees and adopts the well-reasoned construction of the insurance policy set forth in that case. The structure of the policy envisions the bifurcated treatment of bodily injury and property damage claims, on the one hand, and claims for clean-up costs on the other. *Wolf Brothers Oil Co., Inc.*, 718 F.Supp. at 843. Section I.A, which provides coverage for bodily injury and property damage claims, is triggered by the reporting of claims within the policy period. *Id.* In contrast, coverage for clean-up costs under § I.B is triggered by the commencement of governmental action during the policy period. *Id.*

■ "Property damage" is defined in the policy as "contamination" and "loss of use ... because of a pollution incident". To argue that clean-up costs are contemplated by this definition ignores the distinction which permeates the contract that bodily injury, property damage and clean-up costs are distinct kinds of occurrences. *Wolf Brothers Oil Co., Inc.*, 718 F.Supp. at 845. Moreover, even if the Court concluded that clean-up costs were encompassed within the definition of "property damage", an endorsement to the policy contains an exclusion for damage to property owned or used by the insured, "except as provided in I. Pollution Liability Coverage B [§ I.B]". Denomination of clean-up costs as property damage will not therefore rescue a clean-up claim which, by the terms of the policy, is excluded or governed by § I.B. *Id.* Thus, if Alan Corp. is entitled to any coverage under the policy, it must look to § I.B, and, as discussed earlier, that avenue has already proven to be a dead-end.

### IV. ESTOPPEL AND WAIVER

The Alan Corp. argues that ISLIC waived, or alternatively is estopped from asserting, its right to deny coverage under the policy because of three actions allegedly taken by ISLIC: 1) ISLIC's instructions to Alan Corp. to "lay low" once ISLIC received notice of the potential contamination of the Leominster site, 2) ISLIC's statement to Alan Corp. that it would provide coverage for Alan Corp.'s claims once the Worcester site was cleaned up, and 3) ISLIC's initial denial of coverage to Alan Corp. regarding the

Fitchburg site on the grounds that Alan Corp. was uncooperative in determining the extent of contamination. ISLIC denies that it ever told the plaintiffs to "lay low" or that it would provide insurance coverage for the claim. Although Alan Corp.'s proffered evidence that an unnamed ISLIC employee, on an unspecified date, told Alan Corp. to lay low, and that ISLIC would cover Alan Corp.'s claim is tenuous, for the purpose of this summary judgment motion, the Court assumes that ISLIC made those representations to Alan Corp. Notwithstanding the assumption, however, the plaintiffs' arguments of waiver and estoppel are unpersuasive.

## A. *Waiver*

■■■ Waiver is the voluntary and intentional relinquishment of a known right. *Merrimack Mutual Fire Insurance Co. v. Nonaka,* 414 Mass. 187, 189, 606 N.E.2d 904, 906 (1993); *see also Sheehan v. Commercial Travelers' Mutual Accident Ass'n. of America,* 283 Mass. 543, 552, 186 N.E. 627 (1933), 16B Appleman, *Insurance Law & Practice,* § 9081. Waiver arises by the act of an insurer, and whether or not there is a waiver must be determined from all of the facts and circumstances surrounding each case. *See Merrimack Mutual Fire Insurance Co.,* 414 Mass. at 189, 606 N.E.2d at 906, 16B Appleman, *Insurance Law & Practice,* § 9084. To constitute a waiver, there must be an actual intention to relinquish an existing right, with knowledge, either actual or constructive, of its existence, or such conduct as to warrant an inference of such intention to relinquish. 16B Appleman, *Insurance Law & Practice,* § 9085.

■■■ In Massachusetts, the doctrine of waiver does not control where an insured argues that an insurance company has waived the limits of coverage defined in an insurance policy. *Merrimack Mutual Fire Insurance Co.,* 414 Mass. at 191, 606 N.E.2d at 907; *Palumbo,* 293 Mass. at 37–38, 199 N.E. 335. Waiver cannot be used to extend coverage of an insurance policy or create a primary liability. *Palumbo v. Metropolitan Life Insurance Co.,* 293 Mass. 35, 37–38, 199 N.E. 335 (1935) ("whatever may be the scope of waiver in the law of insurance, it does not extend to the broadening of coverage, so as to make the policy cover a risk not within its terms. That would require a new contract, and cannot be accomplished by a waiver."); 16B Appleman, *Insurance Law & Practice,* § 9090. Alan Corp. seeks to use the doctrine of waiver to do exactly that, to extend coverage to a situation where none exists under the policy. *See* § III *supra.* Such an attempt must fail.

■■■ Even if an insurance company could be found, however, to have waived the limits of coverage stated in its policy, this case would not support a waiver. ISLIC did not voluntarily relinquish a known right. Alan Corp. reported "potential contamination" of the Leominster and Fitchburg sites to Mr. Wellington on August 25, 1987, and ISLIC actually received notice of the potential claims on August 28, 1987. Alan Corp. did not confirm the existence of contamination of either site until Lycott completed its assessment of the two sites on October 30, 1987. Thus, ISLIC was not informed that there was, in fact, contamination of the sites until approximately two months after the policy had expired. Therefore ISLIC did not, on or about August 28, 1987, knowingly and intentionally waive its right to deny coverage by instructing Alan Corp. to "lay low", or that it would provide coverage, because, at the time, ISLIC did not know 1) there was contamination of the two sites, and 2) that Alan Corp. was claiming coverage under the policy.

■■■ Alan Corp. also claims that ISLIC waived any grounds for denying insurance coverage regarding the Fitchburg site, other than the stated ground of lack of cooperation in determining the extent of contamination. As stated earlier, however, a claim of waiver, whatever its form, cannot be used to create coverage under an insurance policy where none exists. *Merrimack Mutual Fire Ins. Co.,* 414 Mass. at 191, 606 N.E.2d at 907; *Palumbo,* 293 Mass. at 37–38, 199 N.E. 335. Additionally, denial of liability on one ground does not infer the waiver of other defenses where the insured is not prejudiced by the carrier's assertion thereof. *See e.g. Royal Globe Ins. Co. v. Craven,* 411 Mass. 629, 635, 585 N.E.2d 315, 319 (1992). Alan Corp. has

failed to supply the Court with any evidence of such prejudice.

## B. *Estoppel*

██ Estoppel refers to an abatement raised by law of rights and privileges of the insurer where it would be inequitable to permit their assertion. 16B Appleman, *Insurance Law & Practice*, § 9081. Estoppel necessarily implies prejudicial reliance of the insured upon some act, conduct or nonaction of the insurer. *Id.* The insurer will be estopped from denying liability where, by its course of dealing, or its open actions, it has induced the insured to pursue a course of conduct to his detriment. *Id.* at § 9088; *see also Royal Globe Ins. Co. v. Craven*, 411 Mass. 629, 635, 585 N.E.2d 315, 319 (1992); *Noble v. John Hancock Mutual Life Ins. Co.*, 7 Mass.App.Ct. 97, 99, 386 N.E.2d 735, 736 (1979). For there to be an estoppel as a matter of law, however, a party's reliance upon a statement or action must be reasonable. *O'Blenes v. Zoning Board of Appeals*, 397 Mass. 555, 558, 492 N.E.2d 354, 356 (1986); *Ford v. Rogovin*, 289 Mass. 549, 552, 194 N.E. 719, 720 (1935).

██ Alan Corp. claims that ISLIC should be estopped from denying it coverage because of ISLIC's instruction on or about August 28, 1987 to lay low, and not to worry because ISLIC would provide coverage. Alan Corp. claims that it relied upon this instruction and assurance to its detriment, and implies that it could and would have contacted the D.E.P. on or before August 28, 1987 (the date the policy expired), but for ISLIC's instructions.

Alan Corp.'s estoppel argument fails because its reliance on ISLIC's instruction and assurance was not reasonable. Alan Corp. had a statutory obligation to report any release or threatened release of oil to the D.E.P. M.G.L. c. 21E, § 7. An instruction from the insurer to disregard the law did not relieve Alan Corp. of its duty to follow the statutory mandate. Alan Corp.'s reliance on

the insurer's instruction, which ran contrary to its legal obligation, was not "reasonable" as a matter of law. *Cf. O'Blenes*, 397 Mass. at 558, 492 N.E.2d at 356 (counsel's reliance on a statement by the Board of Appeal's clerk stating the last day for completing procedural requirements for appeal, was not reasonable; rather, counsel had an obligation to take notice of statutory requirements.)

## V. CHAPTER 93A CLAIM

██ Alan Corp. has alleged a claim of unfair and deceptive trade practices against ISLIC pursuant to M.G.L. c. 93A, §§ 2 and 11, asserting unfair insurance claim settlement practices, in violation of M.G.L. c. 176D, §§ 3(9)(a–f) and (n). Although Alan Corp. has claimed ISLIC violated all of these various sections, it fails to allege facts or explain how ISLIC's actions violated each section. Fed.R.Civ.P. 8 requires that a plaintiff set forth a "short and plain statement of the claim showing that the pleader is entitled to relief ..." Alan Corp. has failed to satisfy the requirement of Fed.R.Civ.P. 8. Merely chanting the statutory mantra of the seven subsections of M.G.L. c. 176D does not suffice to satisfy the requirement, in the absence of a factual basis supporting the allegations.

The allegations of unfair settlement practices as to which Alan Corp. does offer some factual back-up fall into two general categories: 1) that ISLIC committed an unfair and deceptive trade practice by unfairly denying coverage to Alan Corp. under the policy for the clean-up costs associated with the Leominster and Fitchburg sites, and 2) that ISLIC unfairly delayed its decision to deny coverage to Alan Corp. With regard to these allegations, the Court considers M.G.L. c. 176D, §§ 3(9)(e, f and n) in more detail.

██ To assert a claim under M.G.L. c. 93A, § 11, a plaintiff must show that the defendant 1) committed an unfair or deceptive trade practice, and 2) that it suffered a loss of money or property as a result of that unfair trade practice.[4] With respect to the

4. ISLIC argues that Alan Corp. improperly brought its M.G.L. c. 93A claim under §§ 2 and 11, instead of under M.G.L. c. 93A, § 9, because, unlike § 9, § 11 does not specifically incorporate violations of M.G.L. c. 176D as redressable un-

fair and deceptive trade practices. ISLIC's argument is not persuasive. While the express language of § 11 does not specifically incorporate violations of M.G.L. c. 176D, case law has construed the statute so as to assume that § 11 also

first prong, Alan Corp. must demonstrate that ISLIC engaged in unfair claims handling through bad faith actions which were unethical, oppressive or inherently unfair. *Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 406 Mass. 7, 14–15, 545 N.E.2d 1156, 1160 (1989).

■ With regard to Alan Corp.'s claims that ISLIC unfairly denied it coverage under the policy, the first inquiry is whether the carrier's decision to deny coverage was based on a plausible interpretation of the policy, *Boston Symphony Orchestra, Inc.*, 406 Mass. at 14, 545 N.E.2d at 1160; *Gulezian v. Lincoln Ins. Co.*, 399 Mass. 606, 613, 506 N.E.2d 123, 127 (1987). The inquiry thus ends here. ISLIC's denial of coverage to Alan Corp. under the policy for the clean-up of the Leominster and Fitchburg sites was based not only upon a plausible interpretation of the policy, but also the correct construction of the policy. There was nothing unethical, oppressive or unfair about ISLIC's decision to deny coverage to Alan Corp.

■ Alan Corp. also claims that ISLIC unfairly delayed its decision to deny coverage under the policy, and that Alan Corp. was prejudiced by that delay. Alan Corp. first submitted loss notices relative to the Leominster and Fitchburg sites on August 25, 1987, stating that there were potential pollution problems with both sites, and that Lycott would investigate these problems. Within 60 days of that notice, ISLIC's claims handler investigated the claim. Alan Corp. first incurred a financial obligation to clean up the Leominster and Fitchburg sites, for which it could submit a claim for reimbursement, when the D.E.P. ordered it to clean up the sites. The D.E.P. first ordered a clean-up of the Leominster site on January 11, 1989. ISLIC denied coverage under the policy on that site on June 8, 1989. It is a

question of fact whether or not a six-month delay was "unreasonable", and thus rose to the level of a violation of M.G.L. c. 176D.[5]

■ The plaintiff, however, must also proffer some evidence that it has suffered a loss of money or property as a result of ISLIC's alleged unfair act or practice. M.G.L. c. 93A, § 11. *Kerlinsky v. Fidelity & Deposit Co. of Maryland*, 690 F.Supp. 1112, 1120 (D.Mass.1987), *aff'd*, 843 F.2d 1383 (1st Cir.1988). Alan Corp. claims that it has suffered such damage by incurring costs to respond to the D.E.P. claims and orders. This harm, however, was not caused by any act of ISLIC in denying coverage under the policy, much less a delay in denying the coverage. Rather, Alan Corp. would have been required to incur these clean-up costs under M.G.L. c. 21E, § 7, whether or not it had insurance coverage. Furthermore, the policy specifically provides that ISLIC only reimburse the insured, rather than make initial payments for reasonable and necessary clean-up costs which otherwise qualify for coverage. Additionally, the express language of § I.B of the policy did not require ISLIC to defend Alan Corp. with respect to any D.E.P. actions. Rather, ISLIC had the right to associate itself with the actual defense of Alan Corp. in the D.E.P. proceedings, but was not obligated to do so. A speedier decision to deny coverage would not have affected Alan Corp.'s need to clean-up the two sites in question.

Alan Corp. has also alleged in its reply brief that ISLIC's delay in denying coverage has harmed it by preventing it from having full use of its property. This allegation rests, however, on conjecture which is unsupported by the record. Alan Corp. has not specifically described the harm, nor has it submitted any affidavits or other evidence which even minimally supports this claim of harm. For

provides a vehicle to redress unfair claim settlement practices. *See e.g. Travelers Ins. Co. v. Waltham Indus. Lab. Corp.*, 722 F.Supp. 814, 831 (D.Mass.1988), *aff'd in part, rev'd in part*, 883 F.2d 1092 (1st Cir.1989).

**5.** With respect to the Fitchburg site, the D.E.P. apparently never ordered clean-up of the site, although it did issue a notice of responsibility to Alan Corp. on August 13, 1991. ISLIC, however,

had previously denied coverage under the policy to Alan Corp. on August 8, 1989. There does not appear to be any delay in the decision to deny coverage to Alan Corp. with respect to the Fitchburg site. Additionally, Alan Corp. has failed to provide any evidence with respect to the loss of money or property it suffered because of any delay by ISLIC in denying coverage on the Fitchburg site, as required by M.G.L. c. 93A, § 11.

these reasons, summary judgment on this ground will be entered against Alan Corp.

## VI. CONCLUSION

For the foregoing reasons, it is hereby ORDERED:

1) Motion of plaintiffs, The Alan Corporation and East Side Oil Company, Inc., for summary judgment is DENIED.

2) Motion of defendant, International Surplus Lines Insurance Co., for summary judgment on all counts is ALLOWED.

## JUDGMENT

The above captioned matter came before the Court on cross-motions for summary judgment on all counts of the Complaint of the plaintiffs, the Alan Corporation and East Side Oil Company, Inc., namely, Count I for declaratory judgment, Count II for breach of contract and Count III for unfair and deceptive trade practices under M.G.L. c. 93A.

After hearing and due consideration, and in accordance with the Memorandum of Decision filed this date, it is hereby adjudged:

1. Plaintiffs' Motion for Summary Judgment on all Counts of their Complaint is DENIED; and

2. Motion of Defendant, International Surplus Line Insurance Company ("ISLIC"), for summary judgment on all Counts of the plaintiff's Complaint is ALLOWED. The Court declares that ISLIC is not obligated to provide coverage to The Alan Corporation and East Side Oil Co. under the environmental impairment liability insurance policy with respect to the Leominster and Fitchburg sites.