The ALAN CORPORATION and East Side Oil Company, Plaintiffs, Appellants,

v.

INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, Defendant, Appellee.

No. 93–1697.

United States Court of Appeals, First Circuit.

Heard Jan. 4, 1994.

Decided April 22, 1994.

**340**

Raymond J. Reed, Worcester, with whom Reed & Reed was on brief, for appellants.

Donald V. Jernberg, Chicago, with whom Thaddeus Murphy, Oppenheimer Wolff & Donnelly, Keith C. Long, Robert A. Whitney, and Warner & Stackpole, Boston, were on brief, for appellee.

Before TORRUELLA, Circuit Judge, ALDRICH, Senior Circuit Judge, and STAHL, Circuit Judge.

STAHL, Circuit Judge.

In this appeal, we must determine whether a policy issued by defendant-appellee International Surplus Lines Insurance Company (ISLIC) covers clean-up costs which were imposed upon plaintiffs-appellants Alan Corporation and East Side Oil Company, Inc. (hereinafter "Alan Corp."). The district court found that the clean-up costs were not covered by the policy, and entered summary judgment in favor of ISLIC. We affirm.

## I.

### FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

Alan Corp. sells fuel oil to retail customers in central Massachusetts. As part of its business, it stores oil in large tanks at several different locations. On August 28, 1986, Alan Corp. obtained a pollution liability policy ("the policy") from ISLIC in order to insure against potential liability arising from storage tank leaks. The policy covered two Alan Corp. storage sites located in the Massachusetts towns of Leominster and Fitchburg.

The policy was a one-year "claims made" policy,[1] in which ISLIC undertook, *inter alia*, to reimburse Alan Corp. for clean-up costs incurred as a result of government agency orders. In relevant part, the policy stated:

> The company will reimburse the insured for reasonable and necessary clean-up costs incurred by the insured in the discharge of a legal obligation validly imposed through governmental action *which is initiated during the policy period....*

(Emphasis supplied). The policy ran from August 28, 1986 to August 28, 1987.

On or about August 25, 1987, just prior to the expiration of the policy, Alan Corp. became aware of potential contamination at its Fitchburg and Leominster facilities. In apparent partial compliance with state fire regulations,[2] David White, an Alan Corp. employee, phoned the Leominster Fire Department and notified it of the potential contami-

---

1. The Supreme Court has explained that "[a]n 'occurrence' policy protects the policy holder from liability for any act done while the policy is in effect, whereas a 'claims made' policy protects the holder only against claims made during the life of the policy." *St. Paul Fire & Marine Ins. Co. v. Barry,* 438 U.S. 531, 535 n. 3, 98 S.Ct. 2923, 2927 n. 3, 57 L.Ed.2d 932 (1977). Thus, " 'a doctor who practiced for only one year, say 1972, would need only one 1972 "occurrence" policy to be fully covered, but he would need several years of "claims made" policies to protect himself from claims arising out of his acts in

1972.' " *Id.* (quoting *Barry v. St. Paul Fire & Marine Ins. Co.,* 555 F.2d 3, 5 n. 1 (1st Cir. 1977)).

2. The Massachusetts Board of Fire Prevention Regulations, Mass.Regs.Code tit. 527, § 9.19(1)(b) (1986) provided, in relevant part, "In the event of a leak ... the owner or operator shall immediately notify the head of the local fire department and [the Massachusetts Department of Environmental Protection]."

nation at the Leominster site. A Fire Department employee told White to determine what contamination, if any, existed and to report any such contamination to the Massachusetts Department of Environmental Quality Engineering, now known as the Massachusetts Department of Environmental Protection ("DEP"). No governmental agency was notified of the potential contamination of the Fitchburg site at this time.

Alan Corp. also submitted "Loss Notice" forms to ISLIC. These forms, dated August 28, 1987, stated that a "[p]reliminary survey shows a pollution problem" at both the Leominster and Fitchburg sites.

Alan Corp. alleges that on an unspecified date after the initial report to ISLIC of contamination at the Leominster and Fitchburg sites, an unidentified ISLIC employee told Alan Corp. to "lay low" with respect to those two sites until the clean-up of a third Alan Corp. storage site, located in Worcester, was completed. (It appears that an entirely separate policy issued by ISLIC provided coverage for the Worcester site, that there was contamination at the Worcester site, and that during late August of 1987, ISLIC was involved with clean-up at the Worcester site). That same unidentified employee allegedly assured Alan Corp. that ISLIC also would provide coverage for any necessary clean-up of the Leominster and Fitchburg sites upon completion of the Worcester site clean-up.[3]

In addition, ISLIC assigned an investigator to assess the contamination at the Leominster and Fitchburg sites. Toward that same end, Alan Corp. hired Lycott Environmental Research Company, Inc. ("Lycott") to investigate both sites.

About two months after these initial responses, the Lycott investigation revealed contamination at both sites. On July 12, 1988, approximately eight months after the date of the Lycott report and nearly eleven months after the expiration of the policy, Alan Corp. reported the contamination of the Leominster site to DEP. On January 11, 1989, nearly eighteen months after the expiration of the policy, DEP ordered the clean-up of the Leominster site. On March 30, 1989, DEP issued a "notice of responsibility" to Alan Corp. for the Leominster site. Thereafter, Alan Corp. conducted remedial efforts as required by DEP. The record does not reveal when Alan Corp. notified DEP of the contamination at the Fitchburg site, but on August 13, 1991, DEP ordered clean-up at that site and Alan Corp. complied.

Based on the foregoing facts, Alan Corp. sought reimbursement from ISLIC for clean-up costs incurred at the Leominster and Fitchburg sites. ISLIC denied coverage and Alan Corp. brought suit. ISLIC moved for summary judgment, arguing that no governmental action had been initiated within the policy period, as required by the terms of the policy. The district court granted summary judgment, reasoning that the call to the Leominster Fire Department, standing alone, did not amount to "governmental action which is initiated during the policy period" and that therefore coverage was not afforded under the policy. *See Alan Corp. v. International Surplus Lines Ins. Co.*, 823 F.Supp. 33 (D.Mass.1993).

## II.

### DISCUSSION

#### A. Standard of Review

Our review of a district court's grant of summary judgment is plenary. *Bird v. Centennial Ins. Co.*, 11 F.3d 228, 231 (1st Cir.1993). We read the record indulging all inferences in a light most favorable to the non-moving party. *Levy v. FDIC*, 7 F.3d 1054, 1056 (1st Cir.1993). Summary judg-

---

**3.** Alan Corp.'s president, Joel Robbins, swore in an affidavit that the "lay low" comment and the accompanying promise to provide coverage occurred. He did not specify any individual at ISLIC who may have made the comments, nor did he specify any individual at Alan Corp. who may have heard them, nor any time or date when the comments may have been made. The district court characterized Alan Corp.'s claims with re-

gard to these comments as "tenuous," *Alan Corp. v. International Surplus Lines Ins. Co.*, 823 F.Supp. 33, 42 (D.Mass.1993), and we further note that these statements probably do not satisfy Fed.R.Civ.P. 56(e)'s requirement that affidavits "set forth such facts as would be admissible in evidence." Nonetheless, like the district court, we assume for the purposes of this opinion that the statements were made.

ment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.*

■ Moreover, where, as here, the facts upon which liability is claimed or denied under an insurance policy are undisputed and the existence or amount of liability depends solely upon a construction of the policy, the question presented is one of law. *Atlas Pallet, Inc. v. Gallagher,* 725 F.2d 131, 134 (1st Cir.1984). As with other questions of law, we owe no deference to the district court's interpretation of the policy. *Id.* Finally, neither party disputes that Massachusetts law applies.

### B.  The Call to the Fire Department

■ Alan Corp. argues that because its phone call to the Leominster Fire Department took place within the policy's claims period, the clean-up costs, which were incurred as a result of the order by DEP some twenty months after the expiration of the policy, were nonetheless "validly imposed through governmental action which [was] initiated during the policy period." In essence, Alan Corp. argues that the call to the Leominster Fire Department was the first of many steps that led to DEP's clean-up mandate, and that, because this first step was taken within the policy period, timely "governmental action" had therefore been "initiated." We disagree.

We begin by noting that neither the phone call to the Leominster Fire Department nor any information conveyed during the phone call, imposed any obligation upon Alan Corp. At best, David White was informed by the Leominster Fire Department that Alan Corp. had a duty to determine if contamination existed and that it had a duty to report any such contamination to DEP. These duties existed entirely independently of the phone call. *See* Mass.Gen.L. ch. 21E, § 7 (stating that an owner of an oil storage site, "as soon as he has knowledge of a release or threat of release of oil material, shall immediately notify [DEP] thereof"); Mass.Regs.Code tit. 527, § 9.19(1)(b) (1986) (stating that "[i]n the event of a leak ... the owner or operator shall immediately notify the head of the local

fire department *and* [DEP]") (emphasis supplied). Thus, even under the most generous reading of the policy, the Fire Department's recitation to David White of Alan Corp.'s duty to report contamination to DEP, without more, does not constitute the imposition of any legal obligation.

Nor was any further governmental action "initiated" through the phone call to the Leominster Fire Department. The Fire Department made no record of the phone call; it sent no representatives to the site; it made no attempt to determine whether Alan Corp. had investigated the spill; it made no attempt to determine whether Alan Corp. had reported any contamination to DEP; and it never communicated with DEP, directly or otherwise, about the spill in any manner. Rather, all clean-up costs in this case were imposed solely and independently by DEP, whose involvement, by Alan Corp.'s own admission, began well after the policy had expired.

In sum, the phone call to the Leominster Fire Department neither amounted to, nor did it "initiate," governmental action for purposes of the policy. Rather, all governmental action resulting in the imposition of clean-up costs was initiated by and through DEP. Because DEP's actions were initiated well after the expiration date of the policy, Alan Corp. was afforded no coverage for its incurred clean-up costs.

### C.  Other Issues

As noted above, an unidentified ISLIC employee allegedly told Alan Corp. to "lay low" with regard to the contamination and went on to assure Alan Corp. that expenses for the clean-up of both the Leominster and Fitchburg sites would be covered by ISLIC. Based on these statements, Alan Corp. argues that the doctrines of waiver and estoppel bar ISLIC from denying coverage.

■■ In the context of insurance claims, waiver is the voluntary and intentional relinquishment of a known right. *Merrimack Mut. Fire Ins. Co. v. Nonaka,* 414 Mass. 187, 606 N.E.2d 904, 906 (1993). It is well established that, whatever the scope of waiver in insurance law, "it does not extend to the

broadening of coverage, so as to make the policy cover a risk not within its terms." *Palumbo v. Metropolitan Life Ins. Co.*, 293 Mass. 35, 199 N.E. 335, 336 (1935).

The policy at issue here covers, *inter alia*, claims made against the insured which are initiated by governmental action *during* the policy period. As pointed out above, the governmental action at issue here was initiated *after* the expiration of the policy. In sum, the doctrine of waiver does not operate in this case to lengthen the period of the policy so as to include the clean-up costs assessed by DEP. Accordingly, Alan Corp.'s waiver argument fails.

■■■ Alan Corp.'s estoppel argument is equally unavailing. Estoppel in the insurance context necessarily implies some reasonable, good-faith reliance by the insured upon some act, conduct or inaction of the insurer, to the detriment of the insured. *See, e.g., O'Blenes v. Zoning Bd. of Appeals*, 397 Mass. 555, 492 N.E.2d 354, 356 (1986). As a general matter, estoppel, like waiver, does not extend, broaden or enlarge coverage so as to include risks not covered within the terms of the policy. *Cf. Nieves v. Intercontinental Life Ins. Co.*, 964 F.2d 60, 66 (1st Cir.1992) (holding that, under Puerto Rico law, an insurance policy cannot be extended by waiver *or* estoppel).

Alan Corp. argues that it would have contacted DEP within the claims period (and thus, presumably, timely governmental action would have been initiated), but for ISLIC's advice to "lay low." Alan Corp.'s argument leaves us to conclude that it was aware, or reasonably should have been aware, of its statutory and regulatory obligation to report potential contamination to DEP. *See* Mass. Gen.L. ch. 21E, § 7; Mass.Regs.Code tit. 527, § 9.19(1)(b) (1986). Moreover, according to Alan Corp.'s own evidence, the Leominster Fire Department *instructed* Alan Corp. to report contamination to DEP. We agree with the district court that reliance upon an insurance company's advice not to report contamination, in the face of both a statutory and regulatory duty to report such contamination *and* advice from a local fire department to do so, can be neither reasonable nor in good faith. In the absence of good faith or reasonable reliance, Alan Corp.'s estoppel argument fails.

■■■ Finally, Alan Corp. argues that ISLIC was unfairly dilatory in making its determination that it would not provide coverage and that this delay amounted to an unfair trade practice under Mass.Gen.L. ch. 93A §§ 2, 11 and Mass.Gen.L. ch. 176D, §§ 3(9)(a-f) and (n). In order to make out a claim under these statutes, however, a claimant must establish *both* that an unfair trade practice occurred *and* that the unfair practice resulted in a loss to the claimant. *See, e.g., Kerlinsky v. Fidelity & Dep. Co.*, 690 F.Supp. 1112, 1120 (D.Mass.1987). In arguing that it suffered a loss due to delay, Alan Corp. focuses almost exclusively on the costs of meeting DEP's clean-up orders.[4] We note, moreover, that regardless of any delay by ISLIC, Alan Corp. bore the initial liability for the clean-up costs assessed by DEP. Moreover, Alan Corp. has not argued, nor could it on the record before us, that ISLIC's alleged delay had any effect on the cost of the clean-up ordered by DEP. Thus, even assuming that there was undue delay, Alan Corp. has failed to offer proof that it was harmed by this delay.

To the extent that Alan Corp. challenges other aspects of the district court's ruling, it does so in a perfunctory manner, without any attempt at developed argumentation.[5] Such

4. In its brief, Alan Corp. adverts in a perfunctory manner to the fact that the cost of remedial work increased while ISLIC delayed its decision. We have often warned parties that issues raised in a perfunctory manner, unaccompanied by some effort at developed argumentation, may be deemed waived. *See, e.g., FDIC v. World Univ. Inc.*, 978 F.2d 10, 15 (1st Cir.1992). Moreover, Alan Corp. made no offer of proof to support this line of argument.

5. For example, Alan Corp. argues without elaboration that Section I.A., the "property damage" provision of the policy, applies in this case. It also argues that a policy extension which it purchased applies to lengthen the relevant reporting period. The district court offered a thorough, well-reasoned discussion which concluded: 1) that Section I.A. does not apply to the claims at issue in this case and 2) that the extension purchased by Alan Corp. only lengthens the reporting period for claims under Section I.A. *See*

arguments may be deemed waived. *See, e.g.,* *Romero Lama v. Borras,* 16 F.3d 473, 481 n. 12 (1st Cir.1994); *FDIC v. World Univ. Inc.,* 978 F.2d 10, 15 (1st Cir.1992).

### III.

### CONCLUSION

For the foregoing reasons, the order of the district court granting summary judgment in favor of ISLIC is

*Affirmed. Costs to appellees.*

*Alan Corp.,* 823 F.Supp. at 40–41; *see also, Wolf Bros. Oil Co., Inc. v. International Surplus Lines Ins. Co.,* 718 F.Supp. 839, 843–45 (W.D.Wa. 1989) (interpreting same insurance contract in a similar manner). Even were we to reach these issues, we find no error in the district court's reasoning.