HENRY J. D. DAVIDSON *vs.* MASSACHUSETTS CASUALTY INSURANCE COMPANY.

Hampden.    September 21, 1949. — December 7, 1949.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & COUNIHAN, JJ.

*Insurance*, Disability insurance, Misrepresentations. *Evidence*, Presumptions and burden of proof, Relevancy and materiality.

It would not have been proper to order a verdict for the defendant at the trial of an action upon a policy of health insurance although the plaintiff was bound by his testimony showing that there had been misrepresentations in his application for the insurance; under G. L. (Ter. Ed.) c. 175, § 186, the burden still was on the defendant to prove either that any misrepresentation was made with actual intent to deceive or that it related to a matter the truth as to which, as compared with the representation, increased the risk of loss.

The mere fact that a physician, not a specialist in degenerative joint disease but in fact suffering from that disease, on an application for health insurance answered affirmatively a question, "Are you in sound condition mentally and physically?" did not require a ruling as matter of law that he had made a misrepresentation; such a question cannot be construed as calling for more than an opinion or a statement to the best of the applicant's knowledge and belief.

At the trial of an action upon a policy of health insurance, it was error to refuse a request by the defendant for an instruction that the jury "must accept as a fact that the plaintiff's answer to" a certain question in his application for the insurance "was false" where such falsity was shown by his testimony by which he was admittedly bound.

At the trial of an action upon a policy of health insurance, where it appeared that the plaintiff had made misrepresentations in his application for the policy, it was error prejudicial to the defendant to admit evidence that, several months later, he had made an application for like insurance to another company; that, upon examining his application attached to the later policy, he had noticed that reference to a certain automobile accident from which he had suffered had been omitted therein; that he then had written to the insurer in the later policy concerning that accident; and that the later policy was still in force.

CONTRACT. Writ in the Superior Court dated March 19, 1942.

The action was tried before *Burns*, J.

*J. H. Rosenshine*, for the defendant.

*L. Powers*, for the plaintiff.

WILKINS, J. This is an action of contract upon a policy of accident and health insurance, issued on June 20, 1931, to recover for total disability occurring in 1941, as the result, the plaintiff contends, of a coronary heart attack. The existence, but not the cause, of total disability was admitted. The answer contains a general denial, and alleges that the policy never took effect both because the plaintiff, with actual intent to deceive, made certain false representations in his application, and because the false representations increased the risk of loss. G. L. (Ter. Ed.) c. 175, § 186.[1] The jury returned a verdict for the plaintiff, and the defendant alleges exceptions.

The plaintiff's testimony included the following: He was a physician in Springfield from 1904 until his retirement on May 6, 1941. His practice was general with some surgery and thirty per cent obstetrics. He was not a specialist in

---

[1] "No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss."

the field of degenerative joint disease. He led a busy life, both day and night, and between 1904 and 1931, the year he took out this policy, had no "real illness" other than the removal of tonsils and appendix. During the latter part of this period prior to 1931 he had intermittent lameness in his joints, which affected him most in his back and hands, and he noticed his lameness by reason of difficulty in grasping forceps. On December 19, 1929, he met with an accident while driving his automobile, and injured his left knee, resulting in what he described as traumatic arthritis and as traumatic synovitis. He worked until January 13, 1930, when he became totally disabled. He consulted a Dr. Goldthwaite in Boston, on January 17 entered a hospital, where he remained in bed till February 5, and then was in a wheel chair for seven days, following which on Dr. Goldthwaite's advice he went to Florida. On March 30, he returned to the hospital for three days and went back to Springfield on April 2. His disability due to the accident was for eleven weeks total and twenty-one weeks partial. Over a period of years it had been his practice to go to a doctor for periodic physical examinations or "check-ups." In 1929 and 1930 he went to a clinic in Boston for a "check-up" and was advised to reduce weight, to work less, and to take daily hand exercises. Prior to his accident he had been advised at the clinic that "he had a form of arthritis, and he knew he had a form of arthritis." He was told by a Dr. Haggart at the clinic following his 1929 visit that they could not guarantee that he might not have a progression of arthritis in the fingers; that it might involve other joints; that if he followed the advice given "it is quite possible that he may be able to check the arthritis where it is at the present time"; and that fatigue is an important factor in arthritis. In 1930 on his second visit to the clinic he had a form of arthritis. Joint disease is a form of arthritis, and "whether it was joint disease or arthritis, he knew he had a condition disabling him at that time." He knew on May 20, 1931, that the accident mentioned in his application had disabled him not only for four weeks but for the longer period as to which

he had testified.  He consulted Doctors Haggart, Bartels,
Allen, and Hare in August, 1929, and in September, 1930,
prior to the date of his application.  Arthritis is a general
term covering any diseases that involve a joint.  All of the
structure composing and surrounding joints, including the
synovitis membrane, may be involved.  His traumatic ar-
thritis was due to the blow on his knee, and he recovered
from that.  "Degenerative joint disease" is one of the forms
covered by the broad term, arthritis, and results from wear
and tear on joints "as we advance in years."  It occurs in
from ninety-eight to one hundred per cent of all men and
women over fifty years of age, and very commonly occurs
earlier.  It is simply a thinning of the cartileges that cover
the bone.  Arthritis is a disease.  Degenerative joint dis-
ease is a disease.  The plaintiff had degenerative joint dis-
ease.  He had symptoms thereof prior to 1930 and still had
it.  Hypertrophic arthritis is an increase of the deposits
around the joint circles of material similar to bone. Rheu-
matism is a term used to describe an infectious form of ar-
thritis.  In 1941 he had a coronary attack.

Under date of May 20, 1931, the plaintiff signed an appli-
cation for the policy in suit, which was filled out by some-
one in his presence.  Certain questions and his answers were:
"11. Are you in sound condition mentally and physically?
Yes."  "13. Have you ever received indemnity for any
accidental injury or illness?  (Give particulars) Auto acci-
dent in 1928, injury to left knee."  "23. Have you had or
are you now suffering from . . . c. Rheumatism — No."
"25. Have you, within the past ten years, had medi-
cal or surgical advice or treatment or any departure from
good health?  If so, state particulars, (Month-Year) 1928;
(Nature of Ailment) Auto accident; (Duration of Ailment)
4 weeks; (Name and Address of Attending Physician)
Dr. Goldthwaite of Boston.  26. What physician did you
consult last?  Dr. Goldthwaite of Boston.  Date — 1928.
Cause — injury to left knee."

The plaintiff also testified that in his answers to questions
13, 25, and 26 the date should have been 1929 and not 1928;

that the duration of his disability was understated at four weeks; that by reason of the advice he had received at the clinic in 1929 and 1930 his answer to 25 was not true; and that Dr. Goldthwaite was not the last physician consulted.

It is not material for present purposes to outline all the evidence. The remaining witnesses were Dr. Haggart and two other doctors, called by the plaintiff, and one Hadley, the defendant's secretary, called by it. The jury could have found that the cause of the plaintiff's disability was the coronary attack; that degenerative joint disease is synonymous with, but a more accurate term than, hypertrophic arthritis; that an individual having degenerative joint disease can be in sound condition physically except for his joints; and that "none of us who are well over fifty are in sound condition." According to the application, the plaintiff was born in 1881.

1. There was no error in the denial of the defendant's motion for a directed verdict. The pertinent principles have been fully and recently stated. Admittedly the plaintiff was bound by his testimony that there were misrepresentations in the application. The burden, however, was upon the defendant to prove that any misrepresentation either was made with actual intent to deceive, or related to a matter the truth as to which, as compared with the representation, increased the risk of loss. Actual intent to deceive is not presumed, but must be proved. *Giannelli* v. *Metropolitan Life Ins. Co.* 307 Mass. 18, 22–23. *Metropolitan Life Ins. Co.* v. *Burno,* 309 Mass. 7. *Rappe* v. *Metropolitan Life Ins. Co.* 322 Mass. 438. It could not have been ruled that the defendant had sustained the burden of proving either affirmative defence. It could not have been said as matter of law that degenerative joint disease would have increased the risk of loss. The question whether the existence of certain ailments increased the risk of loss is commonly a question of fact. *Schiller* v. *Metropolitan Life Ins. Co.* 295 Mass. 169, 177–178. The only answer needing further consideration is that to question 11. The statement that

the plaintiff was in sound condition mentally and physically cannot "be construed as calling for more than an opinion, or a statement to the best of the applicant's knowledge and belief." *Metropolitan Life Ins. Co.* v. *Burno*, 309 Mass. 7, 9. *Rappe* v. *Metropolitan Life Ins. Co.* 320 Mass. 376, 380. That the plaintiff was a physician, but not a specialist in degenerative joint disease, goes to the weight of the opinion.

2. The defendant excepted to the denial of certain of its requests for instructions. The fifth request was: "You must accept as a fact that the plaintiff's answer to question 26 of his written application for this policy was false for the reason that he last consulted Dr. Goldthwaite between March 30 and April 2, 1930, and subsequent thereto, in September, 1930, he consulted Drs. Haggart, Allen, Bartels, and Hare at the Lahey Clinic. If you find that such misrepresentation was made with intent to deceive, there must be a verdict for the defendant." The plaintiff's testimony binds him to the facts stated in this request. The defendant was entitled to the instruction that as matter of law this one distinct step in its defence had been proved. *Rappe* v. *Metropolitan Life Ins. Co.* 322 Mass. 438, 440–441.

There likewise was error in denying requests numbered 4 (1), (2), and (3): "You must accept as a fact that the plaintiff's answer to question 25 of his written application for this policy was false in the following particulars: (1) His auto accident occurred on December 19, 1929, and not in 1928. (2) The duration of his ailment was in excess of 4 weeks. His ailment commenced not later than January 13, 1930, he was confined to the Corey Hill Hospital in Brookline, Massachusetts, from January 17, 1930, to about February 12, 1930, and again from March 30, 1948 [*sic*], to April 2, 1930, and his ailment continued during the foregoing period commencing not later than January 13, 1930, and continuing for a period of 21 weeks following April 2, 1930. (3) He received medical advice and treatment at the Lahey Clinic in Boston in August, 1929, and September, 1930, the particulars of which he did not dis-

close in his answer to question 25 of his written application. . . . If you find that any of the aforementioned misrepresentations were made with actual intent to deceive or that any of the said matters misrepresented increased the risk of loss under the provisions of said policy, there must be a verdict for the defendant." Requests 4 (4) and (5) need not be considered.

Requests numbered 2 and 6[1] relating to the answer to question 11 were rightly refused for reasons hereinbefore discussed. Request numbered 3 based upon the assumption that the jury might find that the plaintiff was suffering from some form of rheumatism was also rightly refused, there being no such medical evidence, and none of any kind by which the plaintiff was bound.

3. After the defendant had rested, the plaintiff was recalled and on direct examination testified that he applied for a policy, containing total disability provisions, in the New York Life Insurance Company late in 1931, which was issued to him on January 9, 1932; and that a copy of the application was attached to the policy. The plaintiff was then asked and answered three questions subject to the defendant's exception, as follows: Q. "And when you received this policy back, whether or not you noticed that in that application there had been omitted any reference to an automobile accident that you had?" A. "I did." Q. "And after you found that that had been omitted, did you then write and advise the New York Life Insurance Company that that was omitted, and that you had had

---

[1] Requests 2 and 6 were as follows: "2. You must accept as a fact that the plaintiff was not in sound condition physically on May 20, 1931, and that his answer to question 11 of his written application was false for the reason that he then had a disease known as hyperthropic arthritis or degenerative joint disease. If you find that such misrepresentation was made with actual intent to deceive or that the matter misrepresented increased the risk of loss there must be a verdict for the defendant." "6. Hyperthropic arthritis, also called degenerative joint disease, is a disease and a person suffering from such disease is not in sound condition physically. It is undisputed that the plaintiff had hyperthropic arthritis on May 20, 1931, and therefore you must accept as a fact that the plaintiff was not in sound condition physically on that date and consequently his answer to question 11 of his written application was false. If you find that said misrepresentation was made with actual intent to deceive or that the matter misrepresented increased the risk of loss, there must be a verdict for the defendant." — REPORTER.

Davidson v. Massachusetts Casualty Ins. Co.

this automobile accident?" A. "I did." Q. "And the policy is still in full force?" A. "Yes."

The plaintiff relies upon *Brown* v. *Greenfield Life Association*, 172 Mass. 498, 502, where it was said, "As the defences which might be made if the applications were part of the contracts were in fact on trial by the jury, the evidence as to applications by the insured to other insurers was relevant and competent upon the issue whether his alleged misrepresentations to the defendant were made with actual intent to deceive." An examination of the original papers shows that the excluded evidence was offered by the defendant upon the issue of a supposed misrepresentation by the plaintiff contained in his failure to respond to a question in the application, quoted in the opinion (page 502): "The following are all the companies or associations to which I have ever applied for any life insurance which has been refused on the plan asked for, or postponed." The evidence in the *Brown* case would have been direct proof of a false answer by the plaintiff to that specific question if, as it was contended, the failure to answer was equivalent to an answer of "None." But it was quite another matter to allow the plaintiff in the case at bar, as proof of his own intent, to introduce evidence of one specific act done by him to correct a misrepresentation made to another company at a later date. Wholly apart from the differences in time and in the misrepresentations made to the two companies, this evidence was inadmissible. The fact that upon one occasion the plaintiff made one correction in one application to another insurance company had no tendency to prove that his earlier misrepresentations in the application for the policy in suit occurred without actual intent to deceive. See *Hunneman* v. *Phelps*, 199 Mass. 15, 20. This came to far less than a habit. Yet, as was said in *Commonwealth* v. *Nagle*, 157 Mass. 554, 555, "For the purpose of proving that one has or has not done a particular act, it is not competent to show that he has or has not been in the habit of doing other similar acts." See *Carr* v. *West End Street Railway*, 163 Mass. 360; *Commonwealth* v. *Rivet*, 205 Mass. 464, 466–467; *Noyes* v. *Boston &*

*Maine Railroad,* 213 Mass. 9, 11; *Whitney* v. *Lynch,* 222 Mass. 112, 116.  This did not amount to evidence of general reputation.  Even that could not have been shown, because his own good character was not in issue.  *Schmidt* v. *New York Union Mutual Fire Ins. Co.* 1 Gray, 529, 535.  *Day* v. *Ross,* 154 Mass. 13, 14.  *Geary* v. *Stevenson,* 169 Mass. 23, 31.  *Colburn* v. *Marble,* 196 Mass. 376, 379–380.  *Stearns* v. *Long,* 215 Mass. 152, 155.  *United States Annuity & Life Ins. Co.* v. *Peak,* 122 Ark. 58, 63–64.  *Loving* v. *Mutual Life Ins. Co.* 140 Md. 173, 186–187.  *Stiegler* v. *Eureka Life Ins. Co.* 146 Md. 629, 652.  *Great Western Life Ins. Co.* v. *Sparks,* 38 Okla. 395.  *Munkers* v. *Farmers' Ins. Co.* 30 Ore. 211, 214–215.  But see, contra, *Woodruff* v. *Mutual Life Ins. Co.* 229 Ill. App. 213, 220; *Rogers* v. *Atlantic Life Ins. Co.* 135 S. C. 89, 101; *Mosley* v. *Vermont Mutual Fire Ins. Co.* 55 Vt. 142, 152–153.  And "when character is in issue, it may be shown only by evidence of general reputation, and not by proof of specific acts."  *Miller* v. *Curtis,* 158 Mass. 127, 131.  *Colburn* v. *Marble,* 196 Mass. 376, 380–381.  We think that the admission of this evidence injuriously affected the substantial rights of the defendant.  G. L. (Ter. Ed.) c. 231, § 132.

We do not consider other exceptions relating to evidence, which probably will not arise at another trial.

*Exceptions sustained.*