**U.S. EXPRESS, INC., Plaintiff,**

v.

**INTERCARGO INSURANCE COMPANY and Trade Insurance Services, Defendants.**

No. CV–92–3071.

United States District Court, E.D. New York.

Jan. 14, 1994.

Joseph J. Filardi, Anthony W. Amato, Manhasset, NY, for plaintiff.

Eugene Massamillo, Biedermann, Hoenig, Massamillo & Ruff, New York City, Andrew R. Spector, Hyman & Kaplan, Miami, FL, for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiff U.S. Express, Inc. ("U.S. Express") is a New York corporation engaged in the business of international freight forwarding. Defendant Intercargo Insurance Company ("Intercargo") is an Illinois corporation that, *inter alia*, provides professional liability insurance for international transportation specialists. Plaintiff originally filed this action in New York State Supreme Court, Queens County, by Complaint dated May 6, 1992. Pursuant to 28 U.S.C. § 1446, defendant removed the action to this court; jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332.

On December 1, 1993, pursuant to leave granted by Magistrate Judge Caden, plaintiff filed an Amended Complaint, which names Trade Insurance Services ("TIS") as an additional defendant and alleges that TIS was an insurance broker acting as an agent of Intercargo. (Am.Compl. ¶ 6). The Amended Complaint also states an additional cause of action in negligence. (Am.Compl. ¶¶ 34–44). Although plaintiff filed the Amended Complaint on December 1, service was not received by Intercargo (through the New York Secretary of State) until December 15, 1993—six days after Intercargo served its motion for summary judgment. (Supplemental Affidavit of Andrew R. Spector, Sworn to Dec. 22, 1993 ("Supp. Spector Aff.") ¶ 3). Intercargo moved before Magistrate Judge Caden to strike the Amended Complaint, which motion was denied on December 20, 1993. While Intercargo now contends that the Amended Complaint is "nothing more than a desperate attempt [by U.S. Express] to invent a legal theory" to defeat Intercargo's motion for summary judgment (Supp. Spector Aff. ¶ 5), it does not allege that it is

prejudiced by the late service of the Amended Complaint. Rather, it claims that the record still supports the granting of summary judgment with respect to the Amended Complaint. (Supp. Spector Aff. ¶ 5). The late service of the Amended Complaint therefore does not preclude this court from ruling on the summary judgment motion, and indeed, this court concludes that granting summary judgment on the Amended Complaint in Intercargo's favor is appropriate.

## FACTS

The following facts are derived from the affidavits and Local Rule 3(g) statements of the parties, the pleadings and documentary exhibits submitted to the court and the argument before the court on January 7, 1994.

### A. The Insurance Policies

In June 1990, Intercargo issued Errors and Omissions Insurance Policy No. ELJ–90121, which identified the insured as U.S. Brokers Inc., located at 434 Chelsea Street in East Boston, Massachusetts. The policy period was from June 11, 1990 to June 11, 1991; the premium was set at $1,400; and the policy indicated that the insured had seven employees. (Compl. Ex. A). Under cover of a letter dated July 10, 1990, TIS sent U.S. Brokers an endorsement indicating that effective June 19, 1990, U.S. Express was added to the policy as a named insured. The endorsement noted that "All other terms and conditions [of the policy] remain unchanged." (*Id.*).

Policy No. 90121 was replaced by Policy No. ELJ–90201 (the "policy"), which was effective for the period from June 11, 1991 to June 11, 1992.[1] (Compl. Ex. B). The policy identified the named insured as U.S. Brokers (BOS) Inc. ("U.S. Brokers (BOS)"), located at 434 Chelsea Street in East Boston, Massachusetts. Again, the premium was set at $1,400, and the introduction to the policy indicated that the insured had a staff of seven. The policy also incorporated the en-

---

1. The application for the policy, in the form of a "Supplemental Short Form Application," originally was completed by John Haigh, an agent for

TIS, but was signed by Louise Mailly. (Amato Aff. ¶ 30). The Short Form asks the applicant to update certain sections of the predecessor policy.

dorsement adding U.S. Express as a named insured. (*Id.*).

Under the terms of the policy, Intercargo agreed to indemnify the insured and other "protected persons" "for loss resulting from any negligent act, error or omission committed in the conduct of [the insured's] business as an International Transportation Specialist (*Id.* at Coverage ¶ 1); Intercargo also agreed to defend suits for covered claims, even if a suit was groundless or fraudulent. (*Id.* at Coverage ¶ 2(a)). The policy defined "protected persons" as "people and organizations protected under this agreement"; with respect to corporations, the policy provided as follows:

> **Corporation or Organization.** If you are a corporation or some other type of organization named in the Introduction, you are protected. Your executive officers and directors are protected only while acting within the scope of their duties or authority for you.

> **Employees.** Your employees are protected but only while they're acting within the scope of their duties or authority for you.

(*Id.* at Coverage ¶ 3). The policy further provided that if there were changes in the name or number of protected persons, the insured was obligated to notify Intercargo in writing "no later than the annual anniversary date of this policy if this is a three year agreement. If the number of staff represented is more than 10% higher or lower than the staff size as shown on the Introduction, then an additional premium or refund will be issued to you for the remaining policy period." (*Id.* at Conditions ¶ 13). The agreement also specified that it could be changed only by written endorsement, the form which must be signed by an authorized representative of Intercargo. (*Id.* at Conditions ¶ 12).

Finally, the policy stated that when it was accepted by the insured, the insured agreed that "[t]his policy is issued in reliance upon the truth of the statements and representations contained in your application"; that "[t]he statements and representations are yours"; and that "[n]either you, nor we, have agreed to anything not contained in the agreement." (*Id.* at Conditions ¶ 17).

### B. *The Present Action*

According to the Amended Complaint, during the latter part of 1991, five actions were commenced against U.S. Express in five different states, alleging breach of contract by U.S. Express. (Am.Compl. ¶ 17). It is undisputed that U.S. Express presented all the claims to Intercargo in accordance with the terms of the policy, and Intercargo thereafter commenced its defense of U.S. Express. (Am.Compl. ¶¶ 18–19; Affidavit of Andrew R. Spector, Sworn to Nov. 24, 1993 ("Spector Aff.") ¶ 5(a)). Intercargo subsequently communicated with U.S. Express by letter and telephone at its offices in Jamaica, New York, regarding the claims. (Affidavit of Anthony W. Amato, Jr., Sworn to Dec. 31, 1993 ("Amato Aff.") Ex. 24).[2] However, by letter dated February 13, 1992, Intercargo notified U.S. Express that it was disclaiming coverage and withdrawing from its representation of U.S. Express, effective February 14, 1992. (Am.Compl. ¶ 21). Specifically, Intercargo informed U.S. Express that it was disclaiming coverage on the grounds that the transactions leading to the claims against U.S. Express were conducted by Transnet, Inc., which was not a named insured or protected entity under the policy, and that U.S. Express is not a named insured under the policy. (Amato Aff. Ex. 25).[3] U.S. Express

---

2. In each such letter, Intercargo notified U.S. Express that it "reserve[d] any and all rights available under policy ELJ 90201 until it ha[d] been afforded the opportunity to fully investigate this claim. Any action taken by Intercargo Insurance Company to investigate, adjust, settle or otherwise litigate this claim cannot be construed as a waiver of any of its rights under this policy." (Amato Aff. Ex. 24).

3. In relevant part, the letter from Intercargo claims counsel Ben M. Llaneta, Jr., states as follows:

> Only U.S. Brokers–Boston decided to include U.S. Express as a named insured in its E & O policy (ELJ 90201). However, U.S. Brokers–Boston intended to include into its E & O coverage U.S. Express–Boston only because the disclosed employee count for both companies total seven (7).... According to Dun & Bradstreet, U.S. Express has approximately 115 employees nationwide. Forty-five (45) of

has admitted that it "conducts business in all 50 states of the United States and throughout the world, in that its business involves arranging for the transportation of freight from any point in the world to any other point in the world." (Spector Aff. Ex. F ¶ 8). It further has admitted that it maintains approximately fifteen employees at its offices in Jamaica, New York. (Spector Aff. Ex. F ¶ 10).

U.S. Express thereafter commenced this action, claiming that by denying coverage and refusing to defend, Intercargo breached the insurance contract and breached the covenant of good faith and fair dealing implied in the policy. (Am.Compl. ¶ 24–29). Plaintiff also claims that Intercargo knew or should have known the extent of the business of U.S. Express, and that the declination of coverage is the result of the negligence of Intercargo and TIS in failing to investigate properly the added insured. (Am.Compl. ¶¶ 34–43). In addition, plaintiff seeks a declaratory judgment that it was entitled to be defended and otherwise covered by Intercargo. (Am.Compl. ¶¶ 30–33).

By Answer to the original Complaint dated July 10, 1992, Intercargo denied that it had entered into an insurance contract with plaintiff and asserted various affirmative defenses against plaintiff. (See Spector Aff. Ex. D). Intercargo now seeks summary judgment on the grounds that U.S. Express is not an insured under the policy; that even if U.S. Express were an insured, the policy is void as the result of non-disclosure in the application; and that the Amended Complaint fails to state a cause of action for bad faith. In response, U.S. Express argues that summary judgment is inappropriate because discovery is not complete; the policy clearly and unambiguously names U.S. Express as an insured, and even if the policy is ambiguous, the

extrinsic evidence raises issues of fact; that Intercargo is estopped from denying coverage; and that U.S. Express has stated a viable cause of action for bad faith.

## C. *The Evidence Adduced*

For support for its argument that U.S. Express is not Intercargo's insured under the policy, Intercargo relies mainly upon the testimony of Louise Mailly, a nonparty witness, who is the President and Treasurer of U.S. Brokers (BOS). U.S. Brokers (BOS), which is located in East Boston, Massachusetts, is engaged in the business of customs brokering. (Affidavit of Louise Mailly, Sworn to Aug. 5, 1992 ("Mailly Aff.") ¶¶ 2–3). It was incorporated under the laws of Massachusetts in January 1985 by Mailly and Tom Murray, who is the Chairman and majority shareholder of the corporation. (Mailly Dep. at 6). Murray is also the Chairman and sole shareholder of U.S. Express; however, Mailly is neither an officer nor an employee of U.S. Express. (Affidavit of Thomas D. Murray, Sworn to Dec. 31, 1993 ("Murray Aff.") ¶¶ 1–2, 7–8). U.S. Express does not have an office in Boston and is not a customs broker.

Mailly avers that in 1989, U.S. Brokers (BOS) obtained Policy No. 90201 with Intercargo. She alleges that also in 1989, at Tom Murray's request, she added U.S. Express as an additional insured because "we were exporting under the name of U.S. Express on the carriers, so we needed to have coverage." (Mailly Dep. at 59).[4] Mailly explains her procurement of the insurance policy as follows:

> In providing information to "Intercargo" for the application of Policy No. ELJ 90201, I declared a total of seven employees for our Boston operations. U.S. Brokers (Bos) and U.S. Express Boston uti-

these employees are in the Jamaica, New York offices alone. If U.S. Brokers–Boston intended all the U.S. Express locations included in its E & O coverage then the employee count would have mirrored Dun & Bradstreet's count and each location would have been specified. Employee count is very critical since the amount of premium charged weighs heavily on the number of employees. Our records show that U.S. Brokers–Boston paid premium based on its employee count of seven (7) and not on the obviously higher U.S. Express–New York

or nationwide count of that matter. U.S. Express is not a named insured under the U.S. Brokers–New York E & O policy.
(Amato Aff. Ex. 25).

4. Mailly similarly indicates in her affidavit that "[w]e utilized the name of U.S. Express Boston for airfreight forwarding documentations for our clients while conducting our business out of our Boston address." (Mailly Aff. ¶ 5).

lized the same seven employees and place of business at 434 Chelsea Street, East Boston, Massachusetts. *I did not request nor did I intend that any other offices, business' (sic), or entities, or employees, be insured under this policy other than this specific Boston office.*

(Mailly Aff. ¶ 6) (emphasis added).[5] She further states that "at no time was it the intention to procure Errors and Omission Insurance or any insurance coverages' (sic) for any U.S. Express offices nor employees other than that as specifically disclosed in the application to 'Intercargo'." (Mailly Aff. ¶ 8). At deposition, she indicated that she was not "aware" that she was ever given the responsibility by U.S. Express to obtain an insurance policy for their operations throughout the United States, and that she never obtained such insurance. (Mailly Dep. at 94).[6]

Mailly has signed a second affidavit submitted by U.S. Express with its papers.[7] In this affidavit, she recollects that in or about May 1990, Tom Murray requested her to add U.S. Express Inc. to the policy, which she did. (Affidavit of Louise Mailly, Dated Dec. 31, 1993 ("Mailly Aff. 2") ¶ 11). She avers that in September 1991, Murray asked her to forward to him information regarding the policy, and she accordingly sent him a copy of the endorsement adding U.S. Express to the policy. (Mailly Aff. 2 ¶ 13). Mailly acknowledges that on the bottom of the copy to Murray, she typed "This may not be necessary—but—I must make the statement that should my insurance costs go up due to any claim you might make, that I would expect you to pay the difference." (Amato Aff. Ex. 20 & Mailly Dep. at 60).

Mailly further alleges that on February 18, 1992, she received a telephone call from TIS asking if she had submitted a claim against the policy, and inquiring as to her relationship with U.S. Express; she avers that in

May 1992, a lawyer representing TIS called her "inquiring as to my intent with the errors and Ommissions (sic) Insurance policy and its relation with U.S. Express. Further, I was advised that if I was involved, he would sue me for fraud." (Mailly Aff. 2 ¶¶ 14–15). According to Mailly, in August 1992, an attorney for Intercargo "came to the offices of U.S. Brokers whereupon I signed an affidavit that he brought with him." (*Id.* ¶ 16). Notwithstanding these allegations, as Intercargo points out, at deposition Mailly testified that although the first affidavit was "not necessarily right," it was what she knew to be the truth. (Mailly Dep. at 95–96 & Affidavit of Andrew R. Spector, Sworn to Jan. 3, 1994 ("Spector Reply Aff.") ¶¶ 5–7).

In reliance upon the statements in Mailly's first affidavit, Intercargo alleges that "[a]t best, the instant lawsuit presents a dispute between Louise Mailly and her business partner Tom Murray." (Spector Aff. ¶ 15). Indeed, U.S. Express urges the court to find that "Louise Mailly is not an insurance professional and did not comprehend what the request to add U.S. Express, Inc., entailed." (Pl.'s 3(g) Statement ¶ 8). Murray alleges that he verbally asked Mailly in May 1990 to obtain insurance on behalf of both U.S. Brokers (BOS) and U.S. Express, and that he did not obtain additional coverage for U.S. Express because he believed it had coverage in place. (Murray Aff. ¶¶ 9–10 & Murray Dep. at 92, 94). He concedes that he never signed an application for insurance. (Murray Dep. at 92). In addition, U.S. Express conceded at oral argument that it was not paying any premiums to Intercargo, based on its belief that payment would be "sorted out" between U.S. Express and U.S. Brokers.

Intercargo also has submitted an affidavit from Lawrence R. Graf, Jr., the Vice President in charge of professional liability insurance for Intercargo. (Affidavit of Lawrence R. Graf, Jr., Sworn to Nov. 23, 1993 ("Graf

---

**5.** At deposition, Mailly indicated that there was no legally incorporated entity named "U.S. Express Boston," but that "[t]here was a legal corporation under the name of U.S. Express, Inc. as a Massachusetts corporation," which was dissolved because they "never did any business under it." (Mailly Dep. at 61).

**6.** In addition, with respect to this lawsuit, Mailly alleges that the Boston office has not made any claims under the policy, and that she has not authorized plaintiff's counsel to act on behalf of or file any claims for U.S. Brokers (BOS). (Mailly Aff. ¶ 7; Mailly Dep. at 96–97).

**7.** While Mailly signed the affidavit, it was not sworn to before a notary public.

Aff.") ¶¶ 1–2). Graf avers that he calculates premium rates for insureds based primarily upon employee count and office locations, and that he determined the premium rate for U.S. Express of $1,400 "based upon the seven employees emanating from the Boston office only." He maintains that the premium would have been substantially higher if the policy covered more than seven employees or other geographic offices. (*Id.* ¶¶ 8–10). Graf further alleges that because no request was made to increase the staff size or add other geographic offices as named insureds, the policy covered only the operations of U.S. Brokers (BOS) and U.S. Express in Boston, operating at the Chelsea Street address. (*Id.* ¶ 13). This testimony is corroborated by that of Jay Sorci, the President of TIS, who testified to his understanding that the only place of business of the insured entity—during the seven or eight years they handled the account—was Boston. (Sorci Dep. at 43).

Ben Llaneta, claims counsel for Intercargo, testified at deposition that he determined that "all the claims that were turned in were generated by a U.S. Express entity other than the one in Boston which we insured." (Llaneta Dep. at 13–14). He indicated that at the time, he "was really unaware whether there was another U.S. Express entity out there other than U.S. Express Boston," and that U.S. Brokers (BOS)/U.S. Express was "[j]ust a Boston operation." (*Id.* at 15). Llaneta also testified that Mailly had informed him that "she had no authority whatsoever to procure insurance for any other U.S. Express entities but for what she's running in Boston or for U.S. Brokers for the matter." (*Id.* at 29).

While Llaneta characterized policies antedating Policy No. 90121 as "irrelevant to this case," (*Id.* at 15), U.S. Express urges the court to consider its relationship with Intercargo from 1985, when U.S. Brokers (BOS) first took out a policy. The 1985 policy was

issued by Old Republic Insurance (apparently the predecessor corporation to Intercargo), and named U.S. Brokers (BOS), a "Division of U.S. Express Inc." and located at 25 Maverick Square in East Boston, Massachusetts, as the insured. (Amato Aff. Ex. 7). The insurance application, which Mailly completed, indicated that the insured had other branch offices in New York and Los Angeles; it identified Murray, Mailly and Carol Murray as principals; and it stated that the insured had a total of seven employees.[8]

The policy effective June 11, 1986 was signed by Mailly, but filled out by John Haigh, the agent for TIS. (Mailly Dep. at 43).[9] It again identified the insured as U.S. Brokers (BOS), a division of U.S. Express Inc., and indicated that there were branch offices in New York and Los Angeles, but declared a total of four employees.[10]

The 1987 application—completed in part by Haigh—identified the insured as U.S. Brokers (BOS), located at the Chelsea Street address, but the portion inquiring as to branch offices is blank and five employees are listed. (Amato Aff. Ex. 11 & 12). The 1988 application is substantially the same, but the form includes a space for the insured's IATA (International Air Transportation Association) license number; here, it is identified as 33–7–2859, which indisputably is the license number of U.S. Express. (Amato Aff. ¶ 23 & Ex. 13). The June 1989 application also was signed, but not completed, by Mailly, and it also contained the IATA license number of U.S. Express. (Amato Aff. Ex. 15 & 16).

## DISCUSSION

### A. Choice of Law

Federal courts sitting in diversity jurisdiction must look to the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec.*

---

8. Mailly testified that the application was "fudged" because there actually were three, not seven, employees in 1985. (Mailly Dep. at 47–48).

9. Mailly testified that at times Haigh filled out the insurance application, and at times she did. She also indicated that she would sign the policy completed and typed by Haigh even if it con-

tained mistakes and "wouldn't even bother" to tell Haigh about the mistakes because "[i]t was only an insurance policy and, I mean, I didn't intend to ever use it." (Mailly Dep. at 47, 56).

10. Next to the listing of the two Murrays as principals, "NYC" is noted in parentheses. (Amato Aff. Ex. 9). This same notation is contained on the 1987 application. (Amato Aff. Ex. 12).

*Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). New York courts traditionally have resolved choice of law issues involving insurance policies by considering the following factors: the location of the insured risk; the insured's principal place of business; where the policy is issued and delivered; the location of the broker or agent placing the policy; where the premiums were paid; and the insurer's place of business. *Olin Corp. v. Insurance Co. of N. Am.,* 743 F.Supp. 1044, 1049 (S.D.N.Y.1990), *aff'd,* 929 F.2d 62 (2d Cir.1991); *see also Philips Consumer Elecs. Co. v. Arrow Carrier Corp.,* 785 F.Supp. 436, 442 (S.D.N.Y.1992), *aff'd,* 999 F.2d 537 (2d Cir.1993); *Avondale Indus., Inc. v. Travelers Indemnity Co.,* 774 F.Supp. 1416, 1423 (S.D.N.Y.1991).

█ Intercargo contends that Massachusetts law governs this action because the policy was issued in Massachusetts and the application for the policy was made and delivered in Massachusetts. While U.S. Express does not expressly disagree that Massachusetts law is controlling, it relies primarily on New York law in formulating its arguments. Considering the factors traditionally relevant to a choice of law determination, as listed above, it appears that the insured risk is not confined to one situs; that U.S. Brokers (BOS) is located in Massachusetts, while U.S. Express is located in New York; that the policy indeed was issued and delivered in Massachusetts; that TIS, Intercargo's agent, is located in Illinois; [11] and that Intercargo is located in Illinois. In light of the above factors, and because Intercargo has relied mainly upon Massachusetts law and U.S. Express has not disputed this reliance (and, in fact, has cited several Massachusetts cases in its papers), this court will apply Massachusetts law.

### B. *Summary Judgment Standards*

Summary judgment is appropriate when the moving party establishes that there exist no genuine issues of material fact that bar the court from granting judgment as a matter of law. Fed.R.Civ.P. 56. Once the moving party has carried its burden under Rule 56, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*' ... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Therefore, summary judgment may be granted if "the evidence is merely colorable, ... or is not significantly probative." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (cites omitted).

### C. *Is Plaintiff Intercargo's Insured Under the Policy?*

Intercargo argues that U.S. Express is not an insured under the policy, while U.S. Express maintains that the policy clearly and unambiguously includes it as an insured. Further, U.S. Express argues, even if this court were to find the language of the policy ambiguous, reference to extrinsic evidence to determine the meaning of the contract clearly raises issues of fact sufficient to defeat this motion for summary judgment.

█ It is axiomatic that "[b]efore the general principle regarding the duty to defend applies, it must be shown that the person claiming coverage is, in fact, an insured." Allan D. Windt, *Insurance Claims and Disputes,* § 4.05 at 144 (2d ed. 1988). An ambiguity exists in an insurance contract when the language therein is susceptible of more than one meaning. *Jefferson Ins. Co. of N.Y. v. City of Holyoke,* 23 Mass.App.Ct. 472, 503 N.E.2d 474, 476 (1987). Even if the challenged words are clear and unambiguous in their usual and ordinary sense, they "may be ambiguous *when read in the context of the entire insurance contract,* or as applied to the subject matter." *Id.* at 477, 503 N.E.2d 474 (emphasis added). In Massachusetts, the interpretation of an insurance contract is a question of law for the court. *Id.; Kelleher v. American Mut. Ins. Co. of Boston,* 32 Mass.App.Ct. 501, 590 N.E.2d 1178, 1180 (1992). In the event the court finds the language of the contract is not clear and unambiguous, it may resort to extrinsic evi-

---

**11.** It is unclear from where the premiums were paid.

dence to interpret the contract. *Jefferson Ins. Co.*, 503 N.E.2d at 476 n. 6.

■ Upon review of the insurance contract and the endorsement incorporated therein adding U.S. Express as a named insured, this court finds that the identity of the insured under the policy is ambiguous. While it is true, as plaintiff argues, that U.S. Express is named as an insured without qualification, it also is true that subsequent to the addition of U.S. Express as a named insured, all other terms and conditions of the policy remained unchanged. Therefore, the only address listed on the policy was that at Chelsea Street in East Boston; the number of employees listed was seven; and the premium remained $1,400. Because in the context of the entire insurance contract the identity of the insured is subject to more than one meaning, resort to extrinsic evidence is required.

Both Intercargo and U.S. Express rely to a large extent on the two affidavits submitted by Louise Mailly. As an initial matter, "a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior testimony." *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir.1991), *on remand,* 783 F.Supp. 207 (S.D.N.Y.), *aff'd,* 970 F.2d 895 (2d Cir.1992). This rule has been extended to the testimony and affidavits of non-party witnesses, as well. *E.g., Adelman–Tremblay v. Jewel Cos., Inc.*, 859 F.2d 517, 521 (7th Cir.1988). In any event, this court finds that Mailly's second affidavit does not in any material sense controvert the clear averments contained in the first and in her testimony at deposition: that when she added U.S. Express to the policy, Mailly neither intended to request nor requested insurance for any entity other than the seven employee operation in East Boston, Massachusetts. The fact that Mailly was aware that her insurance costs might increase, as evidenced by her communication to Murray, fails to raise a material question regarding her intent in adding the name "U.S. Express" to the policy. Moreover, Mailly's allegation that she was pressured by the attorneys for Intercargo to sign the first affidavit does not cast into doubt the validity of the assertions contained in that affidavit, given her testimony at deposition that the affidavit contained what she knew to be the truth. (Mailly Dep. at 95–96).

On the other hand, it is clear from the evidence before the court that U.S. Express and U.S. Brokers (BOS) are separate corporations, engaged in different businesses at different locations with different employees. U.S. Express has conceded that it did not pay any premiums to Intercargo and that it did not notify Intercargo about the changes in staff size and the location of its offices. In addition, U.S. Express has utterly failed to refute the testimony of Graf and Llaneta that the only entity covered by the policy was the seven employee operation in Boston. (Graf Aff. ¶¶ 9–10; Llaneta Dep. at 29). In short, the extrinsic evidence presented by the parties fails to raise a genuine issue of material fact concerning whether U.S. Express was Intercargo's insured under the policy, and summary judgment in Intercargo's favor is appropriate.

**D. *Is the Policy Void for Nondisclosure?***

■ Summary judgment also is required based on Intercargo's alternative argument that even if U.S. Express is considered an insured under the policy, the policy is void by reason of U.S. Express's nondisclosure in the application. This issue is governed by statute in Massachusetts; the relevant provision reads as follows:

no … misrepresentation … made in the negotiation of a policy of insurance by the insured or on his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation … is made with actual intent to deceive, or unless the matter represented … increased the risk of loss.

Mass.Gen.L. ch. 175, § 186. This section is a codification of the common law principle that a material misrepresentation by an applicant can invalidate an insurance policy; statements misleading the insurer as to the nature of the risk typically are considered material. *Shapiro v. American Home Assurance Co.*, 584 F.Supp. 1245, 1249 (D.Mass. 1984) (cites omitted); *see also Christiania Gen. Ins. Corp. v. Great American Ins. Co.*,

979 F.2d 268, 278 (2d Cir.1992) ("A fact is material so as to void *ab initio* an insurance contract if, had it been revealed, the insurer ... would either not have issued the policy or would have only at a higher premium."). A failure to disclose is generally considered as much a misrepresentation as a false affirmative statement. *See Schondorf v. SMA Life Assurance Co.*, 745 F.Supp. 866, 870 (E.D.N.Y.1990); *Garde by Garde v. Country Life Ins. Co.*, 147 Ill.App.3d 1023, 101 Ill.Dec. 120, 126, 498 N.E.2d 302, 308 (1986).

Intercargo has asserted that U.S. Express failed to disclose material information on the application for the policy. Specifically, Intercargo contends, U.S. Express did not disclose in the policy that its place of business is in New York; that it conducts business in fifty states and throughout the world; and that its New York office has at least fifteen employees. Rather, it continued to maintain that it was located in Boston and had only seven employees, notwithstanding the requirement in the policy that Intercargo be notified in writing of changes in the name or number of protected persons, and that a change in staff size might require an additional premium or a refund.

Massachusetts courts have held that whether a false statement increases risk ordinarily is a question of fact for the jury. *Shapiro*, 584 F.Supp. at 1249 (*citing Davidson v. Mass. Casualty Ins. Co.*, 325 Mass. 115, 89 N.E.2d 201 (1949)). However, certain misrepresentations—such as a false statement in an insurance application that the applicant does not have cancer—have been found to increase the risk of loss as a matter of law. *Id.* (*citing Pahigian v. Manufacturers' Life Ins. Co.*, 349 Mass. 78, 206 N.E.2d 660 (1965); *Lennon v. John Hancock Mut. Life Ins. Co.*, 339 Mass. 37, 157 N.E.2d 518 (1959)). I find that the misrepresentations alleged in this case are more like those in the *Davidson* line of cases—they involve questions of fact. Nonetheless, U.S. Express has pointed to no evidence that would generate a material question regarding whether its nondisclosures in the policy increased Inter-

cargo's risk of liability. It has not controverted Graf's testimony that the $1,400 premium rate was based on the existence of seven employees only, or that the premium would have been substantially higher if the policy covered additional employees or other offices. (Graf Aff. ¶¶ 9–10). In fact, U.S. Express has conceded that it did not notify Intercargo in writing of any changes in staff size, notwithstanding the express statement in the policy that increases or decreases in staff size may result in an increase or decrease in the premium. Accordingly, U.S. Express has not raised a question of material fact concerning whether the nondisclosures increased the risk of loss and therefore were "material" within the meaning of the statute.[12] *See Mutual Benefit Life Ins. Co. v. JMR Elecs. Corp.*, 848 F.2d 30, 32 (2d Cir. 1988) ("The materiality determination normally presents an issue of fact for the jury, but 'where the evidence concerning the materiality is clear and substantially uncontroverted, the matter is one of law for the court to determine.'") (cites omitted).

**E.** *Is Intercargo Estopped to Deny Coverage?*

■ However, U.S. Express does try to defeat Intercargo's right to decline coverage by claiming that it should be estopped to deny coverage "as a result of it's (sic) reckless and careless underwriting policies with respect to it's (sic) policy number 90201." (Pl.'s 3(g) Statement ¶ 10).

U.S. Express appears to be asserting a theory based on waiver, rather than estoppel. Massachusetts courts have recognized that

> An insurance company is obliged to provide coverage to an insured who has violated a provision of the policy if the company has waived its right to assert the policy breach as a ground for denying liability. Waiver consists of the insurer's voluntary or intentional relinquishment of a known right.... An insurer's intention to waive a ground for not providing coverage may be inferred from the circumstances....

---

**12.** Since the statute requires only that the insurer prove either that the misrepresentation increased the risk of loss or that it was made with intent to deceive, there is no need to consider whether the nondisclosures were made with the intent to deceive. *See Shapiro*, 584 F.Supp. at 1250.

One class of waiver case involves a claimed breach of an insured's duty to the insurer, such as the failure promptly to notify the insurance company of a claim or the failure of an insured to cooperate with the insurance company.... *Another class of waiver case involves claimed misrepresentations by the insured that led the insurer to provide insurance coverage.*

*Merrimack Mut. Fire Ins. Co. v. Nonaka,* 414 Mass. 187, 606 N.E.2d 904, 906 (1993) (cites omitted) (emphasis added). The latter class of waiver was explored in *Employers' Liab. Assurance Corp., Ltd. v. Vella,* 366 Mass. 651, 321 N.E.2d 910 (1975), where the insurer sought a declaratory judgment that it could disclaim liability based on the intentional misrepresentation by the insured of the ownership of his car. The court found that the misrepresentation was not material, but that in any event, the insurer lost its right to disclaim because it knew the facts, failed to disclaim within a reasonable time and acted in a manner inconsistent with the intention to disclaim. *Id.,* 321 N.E.2d at 914.

Construing U.S. Express's argument as a claim that Intercargo waived its right to deny coverage based on its failure to challenge the nondisclosures in the policy, discussed above, U.S. Express still has failed to generate a triable issue of fact precluding summary judgment in this case. In the first place, Intercargo expressly reserved any and all rights available to U.S. Express under the policy in all of its correspondence with U.S. Express regarding the underlying claim. Intercargo also was entitled to rely on the clause in the policy whereby the insured agreed that the "policy is issued in reliance upon the truth of the statements and representations in your application," and that "the statements and representations are yours." Moreover, the policy expressly required the insured to notify the insurer of changes in the number of staff represented, and required that all changes to the policy be made by written endorsement. It is clear that the duty to disclose rests on the insured—not the insurer—and Intercargo was under no obligation to make additional inquiries concerning the identity of U.S. Express. *See Schondorf,* 745 F.Supp. at 871 ("As to an alleged duty on the part of [the insurer] to undertake a more extensive investigation prior to issuing the policy, the 'duty to disclose' clearly rests with the *insured,* ... not the insurer.") (*citing* 12A J. Appleman & J. Appleman, *Insurance Law and Practice,* § 7292 (1981)).

U.S. Express urges the court to look to the policies antedating the policy at issue in this case and to construe Haigh's notation of "NY" next to the names of Tom and Carol Murray; the listing of branch offices in New York and Los Angeles; and the listing of U.S. Express's IATA number as evidence of Intercargo's prior knowledge of the existence of U.S. Express, Inc., as a separate New York entity. As a preliminary matter, the statement on the policy that it replaces the former policy and "automatically ends all coverage you had under that policy," coupled with the lack of discovery concerning the relationship among Haigh, TIS, Old Republic and Intercargo, makes questionable the relevance of these earlier policies. But even if these policies were considered as evidence, the points raised by U.S. Express would fail to generate a triable issue of fact regarding Intercargo's knowledge of the identity of U.S. Express.

### F. The Insurer Bad Faith Claim

Finally, Intercargo has argued that U.S. Express has failed to state a cause of action for "insurer bad faith." However, given the determination reached above that summary judgment in Intercargo's favor is appropriate, there is no need to reach this issue at this time.

### CONCLUSION

In sum, for all the reasons stated above, Intercargo's motion for summary judgment is granted and the Amended Complaint against Intercargo is dismissed.

SO ORDERED.