USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-2244

 GENERAL STAR INDEMNITY COMPANY,

 Plaintiff, Appellee,

 v.

 JAMES J. DUFFY and MARK K. DUFFY,

 Defendants, Appellants.

 APPEAL FROM THE UNITED STATES DISTRICT COURT
 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Charles B. Swartwood, III, U.S. Magistrate Judge]

 Before

 Selya, Boudin, and Lipez, Circuit Judges.
 
 
 
 
 Raymond J. Reed for appellants.
 Daniel P. Sullivan for appellee.

September 8, 1999

 
 LIPEZ, Circuit Judge. James and Mark Duffy own a 48-room
lodging house with two retail stores on the first floor (the
Premises), located at 257 Pleasant Street, Worcester,
Massachusetts. After the Premises sustained over $100,000 in fire
damage in July 1995, the Duffys' insurer rescinded the policy based
on misrepresentations in the Duffys' application for insurance
about the presence of sprinklers on the Premises. The insurer
thereafter filed suit in the district court seeking a declaratory
judgment validating its rescission. The district court obliged,
ruling that the insurer was justified in relying on the
misrepresentation by the Duffys in their application for insurance
that the Premises was protected by sprinklers, despite an earlier
report in the insurer's file indicating the absence of sprinklers.
We affirm.
 I.
 On June 1, 1994, the Virzi Insurance Agency, Inc.
(Virzi), on behalf of the Duffys, requested a quote from E.A. Kelly
for the cost of insuring the Premises. E. A. Kelly has authority
to issue policies on behalf of General Star Indemnity Company
(General Star). In order to facilitate the process, Virzi, on
behalf of the Duffys, forwarded an unsigned application to E.A.
Kelly. That application indicated that: (a) all building
improvements had been updated within the last five years; and (b)
the Premises was sprinklered. The notation that the Premises was
sprinklered was handwritten.
 Having received a quote from E. A. Kelly on June 3, 1994,
Virzi, on behalf of the Duffys, submitted a signed application for
insurance on June 9, 1994. E. A. Kelly issued an insurance policy
for the Premises effective June 9, 1994. The policy contained an
endorsement for "Protective Safeguards" which required smoke
alarms, an ansul [fire protection] system and an automatic
sprinkler system. On June 18, 1994, E. A. Kelly, on behalf of
General Star, ordered an inspection of the Premises for the purpose
of verifying its condition. On July 25, 1994, E. A. Kelly received
the inspection report. The inspection form included a list of
safety systems and devices, some of which had check marks next to
them and some of which had no markings. The inspector's report
contained a hyphen after the word "sprinkler"; the district court
assumed for the purpose of its summary judgment ruling that the
report indicated that the Premises was not sprinklered at the time
of the inspection. Neither E. A. Kelly nor General Star further
investigated whether or not the Premises had an automatic sprinkler
system.
 In May 1995, the Duffys requested a renewal quote from E.
A. Kelly. In response, E. A. Kelly offered to renew the insurance
for the Premises. The policy proposed stated that "SMOKE ALARMS,
SPRINKLER SYSTEM AND ANSUL SYSTEM WARRANTED." On or about June 9,
1995, Virzi, on behalf of the Duffys, provided E. A. Kelly with a
renewal application signed by Virzi and James Duffy. The signed
renewal application warranted that the Premises was sprinklered. 
When E. A. Kelly renewed the insurance policy for the period of
June 9, 1995 through June 9, 1996, it contained an endorsement for
"Protective Safeguards" which required smoke alarms, an ansul
system and an automatic sprinkler.
 On July 9, 1995, the Premises sustained fire damage in
the amount of $105,713.27. On August 7, 1996, General Star
forwarded correspondence to the Duffys denying coverage and
rescinding the policy based on the misrepresentation in the 1995
application that the Premises was sprinklered.
 General Star thereafter filed a complaint for declaratory
judgment pursuant to 28 U.S.C. 2201 & 2202, seeking a judicial
determination that General Star had a right to rescind the
insurance policy based on the misrepresentation. In response, the
Duffys filed counterclaims alleging violations of Massachusetts
insurance and consumer protection laws. The district court granted
General Star a summary judgment, concluding that under
Massachusetts law General Star had a right to rescind the policy
because the Duffys' misrepresentation that the Premises was
sprinklered was material in that it increased the risk of loss to
General Star as a matter of law. The district court further held
that Massachusetts law imposed "no requirement to have the Premises
inspected prior to issuing a renewal policy" and that "General Star
was justified in relying on Mr. Duffy's representation that the
Premises was sprinklered."
 II.
 Summary judgment is warranted only where an examination
of the record, viewed in the light most favorable to the non-moving
party, reveals no material factual disputes and the moving party is
entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c);
Snow v. Harnishfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993). We
review the grant of a summary judgment de novo. Siegal v. American
Honda Motor Co., 921 F.2d 15, 17 (1st Cir. 1990). 
 We apply Massachusetts law to the insurance contract made
in Massachusetts. The Massachusetts statutory provision
establishing the conditions under which an insurer may rescind
contracts of insurance provides:
 No oral or written misrepresentation or
 warranty made in the negotiation of a policy
 of insurance by the insured or on his behalf
 shall be deemed material or defeat or avoid
 the policy or prevent its attaching unless
 such misrepresentation or warranty is made
 with actual intent to deceive, or unless the
 matter misrepresented or made a warranty
 increased the risk of loss.

Mass. Gen. Laws ch. 175, 186. For purposes of this appeal, the
Duffys do not challenge the district court's findings that (1) the
Duffys unintentionally made misrepresentations in their 1995
insurance application to General Star and (2) the misrepresentation
regarding the existence of an automatic sprinkler system increased
the insurer's risk of loss as a matter of law. The single issue
pressed by the Duffys is whether General Star waived its right to
rescind the insurance contract on the basis of that
misrepresentation. The Duffys argue that, at the time General Star
renewed the Duffys' policy in June 1995, General Star knew that the
Premises was in fact not sprinklered because of the inspection
report it received in June 1994. Having renewed the policy with
knowledge that the Premises was not sprinklered, the Duffys argue,
General Star waived its right to rescind on the basis of a
misrepresentation about the presence of sprinklers (or so a jury,
drawing inferences favorable to the Duffys, could have found).
 The Duffys err in their insistence that General Star had
knowledge in June 1995 that there were no sprinklers on the
Premises because of the inclusion in its files of the June 1994
inspection report. That position wrongly accords no legal
significance to the warranty made by the Duffys in their
application for renewed insurance in June 1995 that there were
sprinklers on the Premises. To the extent that the Duffys argue
that the inclusion of the 1994 inspection report in the files of
General Star at least creates a factual issue about whether the
insurer should have inspected the premises to determine the
accuracy of the representation by the Duffys about the presence of
sprinklers, the Duffys again misapprehend the legal significance of
their representation.
 Pursuant to Massachusetts law and insurance law
generally, General Star had a right to rely on the Duffys'
representation that the Premises was sprinklered in June 1995. See
Appleman & Appleman, 16B Insurance Law and Practice 9086 (2d ed.
1967) ("[A]n insurer is entitled to rely on the representations of
an insured without checking all of its files to determine if such
insured is guilty of fraud."). The Duffys were in the best
position to know the truthfulness of their statement about the
sprinklers, and Massachusetts law does not impose an affirmative
obligation on an insurer to investigate and verify the accuracy of
an insured's representations. See U.S. Express, Inc. v. Intercargo
Ins. Co., 841 F. Supp. 1328, 1338 (E.D.N.Y. 1994) (construing
Massachusetts law); see also North American Specialty Ins Co. v.
Savage, 977 F. Supp. 725, 731 (D. Md. 1997) ("Generally, insurers
do not have a duty to investigate insurance applicants and are
entitled to believe what an applicant claims to be true."); Foster
v. Auto-Owners Ins. Co., 703 N.E.2d 657, 660 (Ind. 1998) ("Imposing
this obligation [to cross-check the accuracy of an application
against others submitted by the same applicant] would create the
opportunity to play a catch-me-if-you-can game that would
ultimately generate additional costs to insurers and no legitimate
benefits to insureds."). 
 General Star was further justified in relying on the
Duffys' representation that the Premises was sprinklered because of
the Duffys' impending legal obligation to sprinkler the building. 
On September 25, 1990, the City of Worcester adopted the provisions
of Massachusetts General Laws chapter 148, section 26H, requiring
rooming houses such as the Premises to be equipped with automatic
sprinkler systems no later than September 25, 1995. This
independent legal obligation, applicable shortly after the renewal
of the insurance contract, further justified General Star's
reliance on the representation by the Duffys in June 1995 that the
Premises was sprinklered.
 We recognize the general proposition, cited by the
Duffys, that an insurer may lose its right to rescind the coverage
of an insurance contract if it knows of the facts that may warrant
rescission and fails to disclaim within a reasonable time, or if it
acts in any way inconsistent with an intention to disclaim. See
e.g., Kobico, Inc. v. Pipe, 44 Mass. App. Ct. 103 (1997). Pursuant
to Massachusetts law, "[a]n insurance company is obliged to provide
coverage to an insured who has violated a provision of the policy
if the company has waived its right to assert the policy breach as
a ground for denying liability." Merrimack Mutual Fire Ins. Co. v.
Nonaka, 414 Mass. 187, 189, 606 N.E.2d 904 (1993). "Waiver
consists of the insurer's voluntary or intentional relinquishment
of a known right." Id.
 In this case, however, these principles of waiver are
simply inapposite. As a matter of law, on the basis of the summary
judgment record, General Star was entitled to rely on the
representation of the Duffys in their application for insurance
renewal that the Premises was sprinklered, despite the presence in
General Star's files of the 1994 inspection report. 
 The Duffys challenge the district court's decision on
another ground, noting that the district court cited to an Oregon
case for the proposition that "the presence of a fully operational
sprinkler in an insured building is material to a fire insurer's
risk." Coos Head Timber Co. v. Unigard Indemnity Co., 93 Or. 598,
603, 699 P.2d 1143, 1146 (1985). The Duffys cry foul because the
Coos Head Timber case dealt with a policy in which the presence of
a sprinkler system was a condition precedent while under the
Duffys' policy the insured was only required to warrant the
presence of sprinklers. Ergo, the Duffys argue, the district
court actually treated the sprinkler requirement as a condition
precedent and therefore failed to analyze whether General Star had
waived its right to rescind. See Krause v. Equitable Life Ins.
Co., 333 Mass. 200, 203 (1955) (term which is made a condition
precedent to recovery under an insurance policy is not subject to
waiver).
 The Duffys' argument on this point is unavailing. The
Duffys presented this same argument to the district court in a
Motion to Reconsider and/or Clarify. In disposing of that motion,
the district court acknowledged, as it had in its original summary
judgment order, that Coos Head Timber dealt with a policy under
which an operational sprinkler system was a condition precedent and
that the sprinkler clause in the Duffys' policy constituted a
warranty. The district court, however, was merely citing to Coos
Head Timber for the unassailable legal proposition that "the
presence of a fully operational sprinkler system in an insured
building is material to a fire insurer's risk." Id. Contrary to
the contention of the Duffys, the court did not treat the sprinkler
requirement as a condition precedent and it did consider the issue
of waiver. In all events, our review is de novo, and any
misapprehension below would not affect the outcome of this appeal.
 III.
 In summary, the June 1995 renewal application of the
Duffys warranted that the Premises was sprinklered. This warranty
was explicitly made a part of the insurance contract. Despite the
presence in its files of a June 1994 inspection report indicating
the absence of sprinklers at the Premises, General Star was
justified in issuing the policy renewal on the basis of the Duffys'
new warranty without conducting an inspection of the Premises. 
When General Star discovered that the Premises was not in fact
sprinklered in violation of the policy, and contrary to the
representation of the Duffys, it took timely action to rescind the
policy. The district court was correct in granting summary
judgment for General Star and in dismissing the Duffys'
counterclaims.
 Affirmed.